689 A.2d 935

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael HOUSTON, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian Keith HIGGINS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 10, 1996.

Filed Jan. 30, 1997.

106

Gene P. Placidi, Erie, for Houston, appellant.

Joseph P. Burt, Erie, for Higgins, appellant.

Christian A. Trabol, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before POPOVICH, FORD ELLIOTT and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgments of sentence entered in the Court of Common Pleas of Erie County, following the conviction of Michael Houston and Brian Higgins on drug trafficking and related charges.[1] Herein, Michael Houston and Brian Higgins contend that the lower court erred when it refused to suppress all physical evidence (and "fruit" thereof) which was seized from the automobile which Houston was driving in violation of their rights under Article 1, Section 8 of the Pennsylvania Constitution. We agree and hold that the lower court erred when it failed to suppress the evidence seized from Michael Houston's vehicle in accordance with *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995). Thus, we reverse the decision of the court below and remand for new trials in accordance with the provisions of this opinion.[2]

In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts. *Commonwealth v. Guerrero*, 435 Pa.Super. 440, 646 A.2d 585, 585 (1994); *Commonwealth v. Hendrix*, 426 Pa.Super. 616, 627 A.2d 1224 (1993). While we accept the lower court's findings of fact, we are nevertheless constrained to disagree with the lower court's legal conclusion that the cocaine in question was "in plain view" at the time of its seizure from inside the front pocket of a coat which was removed from the back seat of the vehicle which Michael Houston was driving.

1. Michael Houston was convicted of one count of possession of a controlled substance with intent to deliver, two counts of possession of a controlled substance, one count of possession of drug paraphernalia and one count of criminal conspiracy, and Brian Higgins was convicted of one count of possession of a controlled substance with intent to deliver, one counts of possession of a controlled substance, one count of possession of drug paraphernalia and one count of criminal conspiracy.

2. Michael Houston also alleges that the verdicts were against the weight of the evidence. However, we need not address this issue in light of our remand for a new trial.

Applying the foregoing standard, we find that the record reveals the following facts: On March 20, 1995, Officer Anthony Letkiewicz, Officer Mark Sanders and Sergeant David Robarts of the City of Erie Police Department were on routine patrol when they received a dispatch that a person (later identified as Brian Higgins) against whom an arrest warrant had been lodged was currently at Bizzarro's Towing Co., located at 1130 West 16th Street. Officers Letkiewicz and Sanders were the first to arrive upon the scene and observed two white males—one sitting in the passenger seat and the other outside the vehicle near the driver's side door. When asked to identify himself, Brian Higgins gave the police a false name. The police continued to question Brian Higgins concerning his true identify, and Michael Houston directed Higgins to tell the police his real name. After admitting his true identity, Brian Higgins was arrested and place in a police cruiser. When Officer Sanders removed Higgins from the car to handcuff him, he noticed "plastic baggies" with the corners cut off on the floor of the front seat of the car.[3] Officer Sanders testified that drug traffickers remove the corners of plastic baggies for use as drug packaging.

While the initial encounter with Michael Houston and Brian Higgins transpired, Sergeant Robarts arrived upon the scene and recognized Michael Houston. Knowing that he was currently on state parole, Sergeant Robarts detained Michael Houston, despite his repeated requests to leave, so that the police could determine whether he was in violation of the terms of his parole.

While Sergeant Robarts was questioning Michael Houston, Officer Sanders returned to Houston's car, opened the back door of the automobile, entered and removed two jackets from the back seat in order to determine which was Brian Higgins'. Officer Sanders testified that it was his usual practice to insure that an arrestee had all of his or her personal belongings before transportation to the police station for further processing. Significantly, it is undisputed that Officer Sanders neither asked for nor was given permission to enter the

---

3. Six such baggies were eventually seized.

car to obtain the coats. The officer did not ask Brian Higgins if he wanted his coat, and Brian Higgins did not request Officer Sanders to retrieve his coat.

The first jacket removed from the back seat was Michael Houston's, and Officer Sanders returned the jacket to the seat. Officer Sanders then removed the "Fila" brand-name jacket from the car and saw a bag of white powdery substance, which the officer believed to be cocaine, in the coat's front pocket which was hanging open.[4] Officer Sanders asked the two men to whom the jacket belonged, and both men responded that the jacket was not theirs. Michael Houston then told the police that the coat belonged to a black male named Robert Johnson who was dropped off on 18th Street immediately prior to Houston's arrival at Bizzarro's Towing.[5]

A further search of the pocket of the Fila jacket revealed a razor blade, a small plastic scale and a number of plastic baggies. Michael Houston was then arrested, and both Michael Houston and Brian Higgins were transported to the police station. After his arrest, a small amount of cocaine was found in pocket of Michael Houston's pants. Houston and Higgins were later charged and convicted of possession of cocaine with the intent to deliver and related charges.

 Herein and in their prior suppression motions, Michael Houston and Brian Higgins submit that the lower court erred in refusing to suppress the cocaine which was seized from the jacket in violation of Article 1, Section 8 of the Pennsylvania Constitution. In rejecting their suppression claim, the lower court cited *Commonwealth v. Grimes*, 436 Pa.Super. 535, 648 A.2d 538 (1994) *allocatur denied*, 543 Pa. 702, 670 A.2d 642 (1995), and found that Officer Sanders legally seized the cocaine from the pocket of the coat because it was in "plain view." Clearly, to reach this decision, the lower court believed that Officer Sanders was lawfully in a position to see the cocaine. However, in accordance with our Supreme Court's

---

**4.** The white substance was in fact twenty (20) grams of cocaine.

**5.** No attempt was made to verify whether the jacket did in fact belong to Robert Johnson.

decision in *White, supra,* we find that Officer Sanders was not lawfully inside the vehicle at the time he seized the coat and, consequently, was not lawfully in a position to see the cocaine so that the "plain view" doctrine is inapplicable presently.

The lower court and the Commonwealth have neglected to consider several crucial facts in making their "plain view" analyses. First, Brian Higgins, the subject of the valid arrest warrant, was already arrested and confined to the back seat of a police cruiser at the time of Officer Sanders' entry into Michael Houston's car. Second, Michael Houston was detained pending investigation into his parole status *outside* of the vehicle at the time of the incursion. Third, Officer Sanders neither asked for nor was granted permission to enter the vehicle to obtain Brian Higgins' coat. And fourth, Brian Higgins did not ask Officer Sanders to get anything from the car.

Clearly, Officer Sanders was not authorized by Michael Houston or Brian Higgins to enter the vehicle, regardless of Officer Sanders' stated purpose of insuring that Brian Higgins had all of his possessions for transportation to the police station. Thus, we must determine whether Officer Sanders was authorized by operation of law to enter the vehicle. In *White, supra,* our Supreme Court stated:

> In sum, the general rule is that a search warrant is required before police may conduct any search. As an exception to this rule, police may search a vehicle without a warrant where: (1) there is probable cause to believe that an automobile contains evidence of criminal activity; (2) unless the car is searched or impounded, the occupants of the automobile are likely to drive away and contents of the automobile may never again be located by the police; and (3) police have obtained this information in such a way that they could not have secured a warrant for the search, i.e., *there are exigent circumstances.*

*White,* 669 A.2d at 900.

▪ The record reveals that none of the police officers at the scene felt there was probable cause to believe that the car

contained evidence of criminal activity after Brian Higgins was arrested and placed in the police cruiser. Even after seeing six plastic baggies with their corners cut off in a manner consistent with drug packaging, Office Sanders expressly testified that although the baggies "aroused [his] suspicions", he did not plan to search the entire car based on their observation. N.T., 8/29/95, pp. 29, 30. Simply put, the baggies, without more, did not give police probable cause to search the vehicle.

To label Officer Sanders actions as a mere courtesy to Brian Higgins ignores the fact that the officer entered the private domain of Michael Houston (and Brian Higgins), i.e., the automobile, without permission and, thus, violated their legitimate expectation of privacy in the vehicle. Further, neither Michael Houston nor Brian Higgins were inside the vehicle at the time Officer Sanders entered the vehicle. Thus, this is not a case where the officers were entitled to search areas of the the vehicle accessible to Michael Houston and Higgins for weapons. *Compare, Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721 (1994) (police are authorized to perform a limited search of an automobile for weapons after a traffic stop where suspect made furtive movements which aroused officers suspicions). *White*, 669 A.2d at 902 n. 5. Also, this was not a lawful search incident to an arrest. As stated in *White*, 699 A.2d at 902, "there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody [in order to prevent the arrestee from obtaining weapons or destroying evidence]."

Since the police were authorized neither by Michael Houston nor Brian Higgins nor by operation of law to enter the car, we find that Officer Sanders intrusion into the automobile to obtain Brian Higgins' coat was not lawful, and, consequently, the "plain view" exception to the warrant requirement does not apply. *See, Grimes*, 648 A.2d at 542 (initial intrusion into vehicle must be lawful for the "plain view" exception to apply,

i.e., officer must be lawfully arrive in the spot from which the contraband is plainly viewed).[6]

In addition to its "plain view" argument, the Commonwealth suggests that Michael Houston and Brian Higgins have no standing to challenge the seizure of cocaine from the jacket because when asked if the coat belonged to them, both denied ownership of the coat. The Commonwealth, citing *inter alia, Commonwealth v. Wilson,* 414 Pa.Super. 302, 606 A.2d 1211 (1992), *allocatur denied,* 535 Pa. 658, 634 A.2d 221 (1994), argues that neither Houston nor Higgins had a reasonable expectation in the coat since each "abandoned" his property rights in the coat. The Commonwealth, in this argument, demonstrates an inadequate comprehension of the concept of "abandonment" as it relates to search and seizures.

A cursory review of the the case relied upon by the Commonwealth reveals the fatal flaws in the Commonwealth's argument. In *Wilson, supra,* police officers received a tip that a man wearing a purple shirt and a black jacket was selling drugs in the area of the William Penn Projects. Police officers approached the defendant who fit the description of the suspect in a *public* stairway of the building at 414 Deakyne Place and observed the defendant place a black jacket on the stairway bannister. The police asked the defendant if the jacket was his, and he denied ownership. One of the officers then looked inside the jacket and discovered heroin. The defendant was then arrested. Based on those facts, we held that "appellant voluntarily discarded the jacket and relinquished any interest in the jacket and could no longer retain a reasonable expectation of privacy." *Wilson,* 606 A.2d at 1213, *citing Commonwealth v. Windell,* 365 Pa.Super. 392, 529 A.2d 1115 (1987).

**6.** We note that *White,* 669 A.2d at 903, left for another day the question of whether evidence which was illegally seized in a warrantless search of an automobile may nevertheless be admitted because an inventory search would have disclosed the same evidence. Although such an argument has not been raised by the Commonwealth herein, we note that such an argument, if proffered, would be rejected. Were it not for the illegally discovered drugs in Brian Higgins coat, Michael Houston would have been permitted to leave the scene in the vehicle, and, thus, an inventory search of the vehicle could not have been performed.

The facts before us differ significantly from those of *Wilson, supra,* and related cases. In the present case, police *unlawfully* entered Michael Houston's car before seizing the coat and asking Houston and Higgins about their interests in the coat. Although Michael Houston and Brian Higgins both stated that the jacket was not theirs, but belonged to Robert Johnson, neither discarded the jacket from the area in which they had a legitimate expectation of privacy—the car. Thus, the facts before us do not demonstrate that Michael Houston and Brian Higgins abandoned the coat.[7]

■ More importantly, however, the Commonwealth has failed to recognize that the key to "abandonment" is that it must be "voluntary". Assuming *arguendo* that Michael Houston and Brian Higgins did "abandon" their interest in the property, such "abandonment" was *involuntary,* and any evidence seized therefrom is subject to suppression. As our Supreme Court pointed out in *Commonwealth v. Matos,* 543 Pa. 449, 458, 672 A.2d 769, 774 (1996), "abandoned contraband must be suppressed because '[t]he causative factor in the abandonment ... the unlawful and coercive action of the police....'" *Matos, supra, quoting Commonwealth v. Jeffries,* 454 Pa. 320, 327, 311 A.2d 914, 918 (1973).

As we previously stated, Officer Sanders acted illegally when he entered Michael Houston's vehicle without either his or Brian Higgins' permission in order to obtain the coat. Officer Sanders' intrusion into the vehicle to obtain Brian Higgins' coat violated Michael Houston's and Brian Higgins' reasonable expectation of privacy in the *vehicle.* Since the alleged abandonment was the product of unlawful police conduct, any evidence seized as a result of the unlawful conduct must be suppressed.

In sum, we find that the evidence seized from the pocket of the jacket removed by Officer Sanders from the back seat of Michael Houston's vehicle must be suppressed. Further, all

---

7. Absent actual abandonment of the coat, it is clear that Houston and Higgins had standing to challenge its seizure on Fourth Amendment or Article 1, Section 8 grounds. *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983).

114

evidence subsequently seized as a result of the initial illegality, e.g., the small packet of cocaine taken from Michael Houston's pants pocket after his arrest, must too be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

At Docket Number 2208 Pittsburgh 1995, judgment of sentence reversed. Case remanded for new trial. Jurisdiction relinquished.

At Docket Number 2252 Pittsburgh 1995, judgment of sentence reversed. Case remanded for new trial. Jurisdiction relinquished.