**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Devon A. BARNETTE, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 2000.
Filed Oct. 4, 2000.

---

Joseph P. Burt, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: HUDOCK, STEVENS and BROSKY, JJ.

BROSKY, J.

¶ 1 Appellant Devon A. Barnette appeals from the judgment of sentence imposed after he was convicted by a jury of possession with intent to deliver marijuana, criminal conspiracy to commit possession with intent to deliver marijuana, and corruption of minors. We affirm.

¶ 2 The charges against Barnette arose out of a police search and seizure of a package that contained 2.2. kilograms of marijuana. The facts, as described by the trial court, are as follows.

The package was shipped from Yonkers, New York to a Mike Costonis of 1404 East Lake Road, Erie Pennsylvania. The package was received at the Griswold Plaza Branch of the United States Post Office. While at the post office a Postal Inspector noticed that the package emitted a strong odor of deodorizer, which raised the Inspector's suspicions as deodorizer is often used as a masking agent for illegal drugs. The Inspector contacted the City of Erie Police Department. Detective Mike Nolan and Detective Matthew Fischer responded to the call by the Inspector. As the package had already been delivered, the two detectives went to 1404 East Lake Road to further investigate. At the residence, the Detectives met a juvenile, Aaron Ferrara, who stated that he had just signed for a package, which had been delivered for "Mike." The Detectives asked permission to enter the house to see the package, which was granted by Aaron Ferrara. Aaron Ferrara told the Detectives that "Mike" had told him to sign for the package and that it contained knick-knacks. When the Defendant and co-Defendant, Shane Ferrara[,] arrived at the house, Aaron Ferrara identified the Defendant as the person known as "Mike" who had instructed him to sign for the package. Detective Nolan asked Defendant if the package was his and, if so, whether Defendant minded if the Detective opened the package. Defendant denied he was Mike Costonis and denied any ownership interest in the package. Defendant stated that, since the package was not his package, therefore, he did not care if Detective Nolan opened the package.

Trial Court Opinion, 10/29/99, at 1–2.

¶ 3 After the package was opened, Barnette was arrested and charged with the foregoing charges. Prior to trial, Barnette unsuccessfully sought to have the package and its contents suppressed because the package was opened and searched without a search warrant. He also unsuccessfully sought a writ of habeas corpus with regard to the corruption of minors charge on the basis that there was no evidence that tended to show that he corrupted the morals of Aaron Ferrara.

¶ 4 After trial, Barnette was sentenced to serve 52 to 104 months' incarceration for the possession with intent to deliver conviction, 16 to 32 months' incarceration for the criminal conspiracy conviction, to be served consecutively, and 14 to 28 months' incarceration for the corruption of minors conviction, to be served consecutively. The total sentence was 82 to 164 months' incarceration. No post-trial motions were filed. This appeal followed.

¶ 5 Barnette first challenges the trial court's refusal to grant his motion to suppress the evidence. Barnette argues that the police detectives' opening the United States Mail without a warrant and in the absence of any exigent circumstances was an unreasonable search and seizure under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Barnette does not dispute that the package that was delivered to the residence of Aaron Ferrara was in fact for him. *See* Appellant's Brief at 11. He challenges the validity of Aaron Ferrara's consent to the police entry into the home and consent to the examination of the package. Barnette also contends that, since the package actually was his, he had a possessory interest in it sufficient to confer standing on him to request suppression of the package and its contents. To rebut the trial court's conclusion that Barnette had abandoned the package, Barnette relies on *Commonwealth v. Houston*, 456 Pa.Super. 105, 689 A.2d 935 (1997), asserting that his denials of ownership of the package and its contents, as well as his denial of being Mike Costonis, were based on police misconduct.

¶ 6 If there is sufficient evidence of record to support the suppression court's ruling, and the court has not misapplied the law, then we will not disturb the court's decision, particularly with respect to credibility determinations. *Commonwealth v. Queen*, 536 Pa. 315, 639 A.2d 443 (1994). Since Barnette did not present any witnesses during the suppression hearing, we only look to the Commonwealth's evidence. *Commonwealth v. Boswell*, 554 Pa. 275, 721 A.2d 336, 339 (1997).

¶ 7 Regarding Barnette's standing, a defendant charged with a possessory offense has automatic standing to litigate a suppression motion asserting a violation of Article I, Section 8. *See Commonwealth v. Carlton*, 549 Pa. 174, 701 A.2d 143, 145 (1997). However, to successfully have the seized evidence suppressed, the defendant must demonstrate a privacy interest that was "actual, societally sanctioned as reasonable, and justifiable in the place invaded." *Id.* Under the Fourth Amendment, the defendant has to prove by the totality of the circumstances that he had a legitimate expectation of privacy in the place invaded. *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457, 464–465 (1983). To be considered a "legitimate", an expectation of privacy:

> must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others.

*Sell*, 470 A.2d at 465 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978)).

¶ 8 Barnette had no privacy interest in the place invaded, *i.e.*, the inside of Aaron Ferrara's residence where the package was searched and seized, that would have been protected by either Article I, Section 8 or the Fourth Amendment. There is no allegation that Barnette was a resident or even a guest at the Ferrara home where the package was delivered. A search warrant is not required if the search has been with voluntary consent. *Commonwealth v. Blasioli*, 454 Pa.Super. 207, 685 A.2d 151, 156 (1996), *aff'd* 552 Pa. 149, 713 A.2d 1117 (1998). In order for the consent to be valid, it must be unequivocal, specific, and voluntary. *Id.* Moreover, the consent must be given free from coercion, duress, or deception. *Id.* The question of whether consent was voluntarily given depends upon the circumstances and a consideration of: the setting in which the consent was obtained; what was said and done by the parties present; and the age, intelligence, and intellectual background of the person consenting. *Id.*

¶ 9 The testimony by Detective Michael Nolan at the Omnibus Pre–Trial hearing, accepted by the trial judge, was that Aaron Ferrara was sixteen years old and perhaps mentally retarded. N.T., 10/18/99, at 16, 32. However, the testimony of the detective demonstrated that he had a conversation with Aaron Ferrara that showed Aaron understood why the police wanted to see the package. N.T., 10/18/99, at 37. The detective spent more than an hour speaking with the boy. N.T., 10/18/99, at 34. There is nothing in the record before us to suggest that Aaron Ferrara's consent to the police entry into his home to examine the package was involuntary.

¶ 10 Moreover, a criminal defendant has no privacy expectation in property that he has abandoned. *Commonwealth v. Pizarro*, 723 A.2d 675, 679 (Pa.Super.1998). "No improper or unlawful act can be committed by the officers *prior* to the evidence being abandoned or relinquished." *Id.*

¶ 11 This Court recently explained in *Commonwealth v. Clark*, 746 A.2d 1128 (Pa.Super.2000):

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The is-

sue is not abandonment in the strict property-right sense *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.*

*Id.*, 746 A.2d at 1133–34 (quoting *Commonwealth v. Johnson*, 431 Pa.Super. 291, 636 A.2d 656, 658 (1994)).

¶ 12 In *Houston*, police were dispatched to a scene where they found a vehicle with one man inside of it on the passenger's side and another outside, near the driver's side door. The police arrested the passenger and placed him in a police cruiser. While they were doing so, they noticed on the floor of the front seat plastic baggies with the corners cut off. The officer who observed the baggies in the car returned to it and removed two jackets from the back seat. One of the jackets had a bag of cocaine in its front pocket, which was hanging open. When asked whether the jacket belonged to either of them, both men initially stated that it did not, but they later stated that it belonged to an individual they had previously dropped off. Based on the contents of the jacket, both men were charged and convicted with possession with the intent to deliver the cocaine.

¶ 13 This Court found that the police officer's intrusion into the vehicle was unlawful because the police were not authorized by either of the men or by operation of law to enter the car. Importantly, the panel in *Houston* distinguished the factual scenario in that case from the scenario in

*Commonwealth v. Wilson*, 414 Pa.Super. 302, 606 A.2d 1211 (1992).

¶ 14 In *Wilson*, police, who were responding to a tip about a person selling drugs in a public housing area, approached a man fitting the description in the tip and observed the man place a jacket on a stairway banister. When police asked the man if the jacket belonged to him, he denied ownership. The jacket was subsequently examined and found to contain heroin, and the man was arrested. This Court held that the man had relinquished any interest in the jacket and could no longer retain any reasonable expectation of privacy in it. *Id.*

¶ 15 The panel in *Houston*, on the other hand, found that neither of the men had discarded the jacket from an area in which they had a legitimate expectation of privacy, the interior of Houston's car. Accordingly, it rejected the Commonwealth's argument that the men had abandoned the jacket and given up their legitimate expectation of privacy.

¶ 16 In the present appeal, we have concluded that, when police entered the residence of Aaron Ferrara with his consent, there was no unlawful intrusion into an area in which Barnette had any legitimate expectation of privacy. Thus, we find this case more akin to the situation in *Wilson*, where the individual who denied ownership of the jacket containing the drugs had relinquished any interest in the jacket and could no longer retain any reasonable expectation of privacy in it. We affirm the trial court's conclusion that Barnette abandoned any legitimate expectation of privacy that he had in the package when he denied any ownership interest in it and denied that he was the intended recipient, Mike Costonis.[1]

1. In reaching our conclusion in this appeal, we are cognizant of the ruling of this Court in *Commonwealth v. Black*, 2000 PA Super 253, 758 A.2d 1253. In *Black*, the Commonwealth challenged the trial court's grant of a suppression motion. The appellees in *Black*, Christopher Black and Vincent Diorio, were charged with several drug possession crimes after police, executing a search warrant, entered an apartment in which they were inside. The police had obtained the search warrant on the basis of a tip that a package that was to be delivered to a Barbara Barsh, at the apartment's address, contained cocaine. The package was intercepted in California, opened without a properly executed search warrant, and then resealed and sent to Pennsylvania. Police in Pennsylvania took possession of the

¶ 17 Barnette next contends that there was insufficient evidence to sustain the corruption of minors conviction. In reviewing the sufficiency of the evidence, this Court must determine whether the evidence, and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish beyond a reasonable doubt all of the elements of the crime charged. *Clark*, 746 A.2d at 1136. The offense of corruption of minors is defined as follows:

> (1) Whoever, being of the age of eighteen years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1).

¶ 18 Relying on *Commonwealth v. Decker*, 698 A.2d 99 (Pa.Super.1997), Barnette asserts that the Commonwealth had to prove that the act in question had an inherent tendency to corrupt the morals of a minor less than 18 years of age. Here, he claims that the act was lying to Aaron Ferrara about the contents of the package, telling the youth that it contained knick-knacks. Barnette urges that this lie amounted to telling the youth something legal, and that he had no intention that the boy would learn of the true contents of the package. Therefore, Barnette asserts that his act had no inherent tendency to corrupt Aaron Ferrara's morals.

¶ 19 In *Decker*, the appellant, a thirty-seven-year-old man, was charged with and convicted of corruption of minors related to his having had sexual intercourse with a fifteen-year-old girl. The appellant argued that, at the time he committed the sexual act, his conduct had not been made criminal by the Legislature, citing the repeal of the statutory rape statute and its replacement by the statutory sexual assault statute. The appellant asserted that, to sustain a conviction for corruption of minors, the underlying act must be criminal. A panel of this Court disagreed, finding that for corruption of minors to be proven, the specific underlying act alleged must be proven, but that the act need not be criminal. *Id.*, 698 A.2d at 102. Writing for the panel in *Decker*, Judge Tamilia stated:

> In deciding what conduct can be said to corrupt the morals of a minor, " 'the common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.' " *Commonwealth v. Pankraz*, 382 Pa.Super. 116, 121, 554 A.2d 974, 977 (1989), quoting *Common-*

package, obtained search warrants, searched it, and arranged for it to be delivered to the apartment while police watched. They then executed the warrant to search the apartment. On appeal, this Court addressed the appellees' standing to litigate the suppression motion. The majority in *Black* concluded that, although Black and Diorio had standing to litigate the suppression motion, they lacked a reasonable expectation of privacy in the package because it was not addressed to them and they had both attempted to disassociate themselves from it. Further, the majority upheld the validity of the Pennsylvania search warrant. Judge Ford Elliott filed a concurring opinion in which she concluded that the appellees had standing to litigate the suppression motion. However, she concluded that the appellees had a reasonable expectation of privacy in the private residence that was searched. Judge Ford Elliott would have found that the appellees' challenge to the probable cause to secure the warrants failed. Like the majority in *Black*, we find that Barnette lacked a reasonable expectation of privacy in the package that was searched. Nevertheless, the present appeal involves consent to the search of the residence. We thus find the case before us distinguishable from *Black* as to the expectation of privacy in the premises. Moreover, we find the present case distinguishable from the factual scenario in *Black* because there is no issue before us involving the validity of a search warrant obtained by police.

wealth v. Randall, 183 Pa.Super. 603, 133 A.2d 276 (1957), cert. denied, 355 U.S. 954, 78 S.Ct. 539, 2 L.Ed.2d 530 (1958). Furthermore, corruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.

Decker, 698 A.2d at 101 (quotations and citations omitted). The panel in Decker affirmed the judgment of sentence imposed based on the appellant's conviction. The majority found that the sexual encounter, although not illegal at the time, was the type of act that would offend the common sense of the community and the sense of decency, propriety and morality that most people entertain. The majority further cited the need to protect young females from this type of behavior on the part of older men. Judge Hudock concurred in the result. We do not find the decision in Decker helpful to Barnette's argument since there is no act of a sexual nature involved here.

¶ 20 Instead, we find the Supreme Court's decision in Commonwealth v. Mumma, 489 Pa. 547, 414 A.2d 1026, 1030 (1980), which explained the Commonwealth need not prove the minor's morals were actually corrupted, to be more instructive. The Court stated that the Commonwealth has to prove that the conduct of the defendant tended to corrupt the minor's morals. This is proven by showing conduct toward a child in an "unlimited variety of ways which tends to produce or encourage or to continue conduct of the child which would amount to delinquent conduct." Id., 414 A.2d at 1030. The conduct of the appellant in Mumma was the so-called examination of young boys' genitals, allegedly for

the purpose of inducting them into a club. The Supreme Court found the conduct sufficient to support the conviction of corruption of a minor. Cf. Commonwealth v. Rodriguez, 296 Pa.Super. 349, 442 A.2d 803 (1982) (holding that there was insufficient evidence to convict the appellant, a man who extracted his penis from his pants and shook it while in an alley in the presence of a seven-year-old girl, of corruption of minors, since this conduct was not of a type that tended to produce, encourage, or continue any delinquent conduct of the observer).

¶ 21 Here, the conduct at issue involved Barnette asking a young man to sign for delivery of a package that he knew contained drugs. Barnette's duplicitous conduct offends the common sense of the community, as well as the sense of decency, propriety and the morality that most people entertain. We accordingly find the evidence sufficient to support the corruption of minors conviction.

¶ 22 Finally, we address Barnette's argument that his trial counsel was ineffective in failing to properly raise the sufficiency of evidence issue with regard to the corruption of minors charge and conviction. To prove ineffective assistance of counsel, Appellant is required to show: there is merit to his underlying claims; counsel had no reasonable basis for his course of conduct; and a reasonable probability that, but for the act or omission in question, the outcome of the proceeding would have been different. Commonwealth v. Jones, 546 Pa. 161, 683 A.2d 1181, 1188 (1996).

¶ 23 Barnette does not specify the way in which he believes his counsel was ineffective. We do not consider claims of ineffective assistance of counsel made in a vacuum. See Commonwealth v. Pettus, 492 Pa. 558, 424 A.2d 1332, 1335 (1981). However, since we find no merit to Barnette's underlying argument concerning the sufficiency of the evidence to sustain the corruption of minors conviction, we

also conclude that Barnette's trial counsel was not ineffective for failing to properly raise the issue. *See Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999) (counsel cannot be considered ineffective for failing to raise a claim that lacks merit).[2] Accordingly, Barnette's issue fails.

¶ 24 Judgment of sentence affirmed.

**2.** We note that Appellant is first raising the ineffectiveness of his trial and direct appeal counsel on PCRA. Where the record demonstrates that the claim lacks arguable merit, no evidentiary hearing is needed. *See Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639, 646 (1982). As there is no merit to Barnette's ineffectiveness claim, we reject his present appellate counsel's assertion that there is a need for a remand on the basis that Barnette was previously represented by the public defender's office at trial and in the filing of the notice of appeal. *See Commonwealth v. McBee*, 513 Pa. 255, 520 A.2d 10 (1986). In *McBee*, the Supreme Court stated:

> [w]hen appellate counsel asserts a claim of his or her own ineffective assistance of counsel on direct appeal, the case should be remanded for the appointment of new counsel except (1) where, it is clear from the record that counsel was ineffective or (2) where it is clear from the record that the ineffectiveness claim is meritless.

*Id.*, 520 A.2d at 13.