J-S86017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN CASTAPHENY | |
| Appellant | No. 269 WDA 2016 |

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001309-2015

BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                **FILED MARCH 27, 2017**

Sean Castapheny appeals from the January 28, 2016 judgment of sentence entered in the Cambria County Court of Common Pleas following his conviction for firearms not to be carried without a license.[1]  We affirm.

The trial court set forth the factual and procedural history of this matter in its Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, which we adopt and incorporate herein.  **See** Background, Opinion in Support of Order Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), 4/13/16, at 1-3 ("1925(a) Op.").

Castapheny raises the following issues on appeal:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6106(a)(1).

Whether the pretrial court erred in denying [Castapheny's] Motion to Suppress evidence? Specifically,

a) Where the defendant had a protected, Fourth Amendment, reasonable expectation of privacy in a bedroom used exclusively by him;

b) Where the initial warrantless entry into the bedroom was unlawful and the product of unlawful consent by a third party;

c) Where no exigent circumstances justified the officer's warrantless intrusion through the kitchen to the rear bedroom in pursuit of the defendant;

d) Where the officer's warrantless search by opening a book bag in the rear bedroom was beyond the scope of any consent and the contraband nature of a book bag is not apparent.

Castapheny's Br. at 6.

In reviewing the denial of a suppression motion, we must determine

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted). Further, "[a] defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa.Super. 2009). "[A] defendant accused of a possessory crime who seeks to challenge a search and seizure . . . has automatic standing . . . to maintain that challenge." *Commonwealth v. Sell*, 470 A.2d 457, 468 (Pa. 1983) (internal quotation marks omitted). However, to prevail on a motion to suppress, the defendant must still separately demonstrate that he had a personal privacy interest in the area searched or effects seized, "and that such interest was 'actual, societally sanctioned as reasonable, and justifiable.' Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest." *Commonwealth v. Black*, 758 A.2d 1253, 1257 (Pa.Super. 2000) (quoting *Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998)) (internal citation and emphasis omitted).

In his first three issues, Castapheny challenges the search of the rear bedroom. The trial court, applying the appropriate legal standard to the evidence presented at the suppression hearing, found that Castapheny did not have a reasonable expectation of privacy in the room and denied his

motion to suppress on that ground.[2]  We agree with and adopt the trial court's reasoning, including that Castapheny was no more than a casual visitor to the apartment who, despite staying there occasionally, had no right to exclude others from the room in question. 1925(a) Op. at 4-7.  Because Castapheny has failed to establish a reasonable expectation of privacy in the rear bedroom, we need not address his remaining contentions stemming from the police entry into that room.[3]

In his last issue, Castapheny argues that the police officer's search of a book bag located in the rear bedroom was unlawful "for (1) lack of reasonable suspicion or probable cause to follow Mr. Castapheny through the kitchen into the rear bedroom in the first instance[4] and (2) as beyond the scope of the consent given by the lessor of the premises."  Castapheny's Br. at 17.  He also argues that the contraband nature of the book bag, which was later found to contain a firearm, was not apparent at the time of the search.

_____

[2] Because Castapheny was charged with possessory offenses, he has automatic standing to challenge the search and seizure at issue in this matter.

[3] We also agree with and adopt the trial court's conclusion that the named tenant on the lease had the authority to and did consent to a search of the apartment.  1925(a) Op. at 9-10.

[4] We decline to address Castapheny's argument that the officer lacked reasonable suspicion or probable cause to follow him into the bedroom because, as discussed above, Castapheny did not have a reasonable expectation of privacy in the room.

As the trial court correctly observed, "a criminal defendant has no privacy expectation in property that he has abandoned." ***Commonwealth v. Barnette***, 760 A.2d 1166, 1170 (Pa.Super. 2000). This Court has held:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.*

***Id.*** at 1170–71 (emphasis in original) (quoting ***Commonwealth v. Clark***, 746 A.2d 1128, 1133-34 (Pa.Super. 2000)).

At the suppression hearing, Officer William Slisz, who conducted the search, testified as follows:

Q. Okay. And during that search did you find a bookbag?

A. Yes.

Q. And did you open the bookbag?

A. Yes.

Q. Before you opened it did you ask whether it belonged to anybody?

A. Yes.

Q. Did you ask Mr. Castapheny whether it belonged to him?

A. Originally when he came out of the back room he didn't have that black bookbag on anymore, so I asked if that was his bookbag in there, and he said no.

Q. I'm sorry. So when you asked him if it was his bookbag or not that was prior to the consent search?

- 5 -

A. Yes.

Q. But to be clear, he said the bookbag was not his?

A. Yes.

Q. And then did you search the bookbag?

A. Yes.

N.T., 10/14/15, at 41-42. Because Castapheny specifically denied ownership of the book bag, and thus abandoned it, he had no reasonable expectation of privacy with regard to the bag during the search. ***Commonwealth v. Dowds***, 761 A.2d 1125, 1131 (Pa. 2000) ("Where, as here, an individual's disclaimer of ownership is not the product of improper police conduct and clearly indicates [his] intention, we can perceive no basis for treating it differently than an act from which an intention to abandon may be inferred.").

Accordingly, we conclude that the trial court properly denied Castapheny's motion to suppress the evidence seized during the search.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/27/2017

- 6 -

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :    Trial Court No. 1309 – 2015
                                 :
vs.                              :    Superior Court No. 269 WDA 2016
                                 :
SEAN DARRELL CASTAPHENY,         :
                                 :
          Defendant.             :

**OPINION IN SUPPORT OF ORDER PURSUANT TO
PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)**

CREANY, S.J., April 13, 2016.    Pursuant to Pennsylvania Rule of Appellate
Procedure Rule 1925(a), the suppression court submits the following Opinion in Support of
Order dated October 14, 2015 and filed for record on October 19, 2015:

### BACKGROUND

On May 18, 2015, police officers for the City of Johnstown responded to a reported
burglary in progress where two African American males were seen climbing through a window
at 512 Daniel Street, an apartment in Johnstown, Pennsylvania. AFFIDAVIT OF PROBABLE
CAUSE FILED ON MAY 18, 2015 ["AFFIDAVIT"], pg. 1, ¶¶ 1-2. One male reportedly carried a
black book bag. *Id.* at pg. 1, ¶ 2.

Patrolman William Slisz arrived at the apartment and observed through the window a
white male and two African American males, who matched the reported descriptions, including
one African American male wearing a black book bag. *Id.* at pg. 1, ¶ 3. After the police
officers knocked on the apartment door, the later-identified tenant of the apartment, Jason
Locher, opened it. *Id.* at pg. 1, ¶¶ 4-5. Meanwhile, Patrolman Slisz observed the African
American male carrying the black book bag, later-identified as Defendant, exit the visible room
to a back room. *Id.* Patrolman Slisz followed Defendant to the back room and observed a
semi-automatic handgun and the black book bag on top of the bed. *Id.* Patrolman Slisz was
familiar with Defendant and knew he was convicted of a felony Robbery last year. *Id.*

56

Patrolman Slisz detained Defendant and asked him if he owned the black book bag, which Defendant denied. *Id.*

Patrolman Slisz advised Locher that they were there because of a reported burglary in progress and that he observed a firearm lying on the bed in the back room. *Id.* at pg. 1, ¶ 6. Locher denied knowing anything about the firearm, but stated that Defendant had stayed in the back room the night before. *Id.* Locher recalled that before he could answer his apartment door, he witnessed Defendant wearing a black book bag along with another African American male[1] climbing through the window. *Id.* at pgs. 1-2, ¶ 6. At Patrolman Slisz's request, Locher consented to a search of his apartment and signed a "Consent to Search" form. *Id.* at pg. 2, ¶ 7. Patrolman Slisz then searched the black book bag located on the bed in the back room and found a fully loaded .38 caliber revolver wrapped in a t-shirt. *Id.* Patrolman Slisz seized the .38 caliber revolver from the black book bag as well as the loaded semi-automatic 9mm handgun from on top of the bed. *Id.*

As Patrolman Slisz transported Defendant from one police cruiser to another, he observed a blue stamp bag fall from his person, which prompted a strip search of Defendant. *Id.* at pg. 2, ¶ 8. This search revealed on Defendant's person: 18 grams of suspected crack cocaine; approximately 20 individually packaged small crack rocks; six small baggie corners containing an unknown brown material; and a silver digital scale. *Id.* at pg. 2, ¶ 10. All collected evidence tested field positive. *Id.* at pg. 2, ¶ 13.

As a result of the above-referenced events and seizures, Defendant was charged with the following six counts:

(1) Manufactured, Delivered, and/or Possessed with the Intent to Manufacture or Deliver a Schedule I Controlled Substance, Heroin (Felony), 35 P.S. § 780-113(a)(30);

(2) Manufactured, Delivered, and/or Possessed with the Intent to Manufacture or Deliver a Schedule II Controlled Substance, Cocaine (Felony), 35 P.S. § 780-113(a)(30);

(3) Person Not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms (Felony 2nd Degree), 18 PA. C.S.A. 6105(a)(1);

---

[1] This individual was later-identified as Antrione Hornbuckle, the co-defendant in this matter below. AFFIDAVIT, pg. 1, ¶ 5.

(4) Intentionally Possessed a Schedule I Controlled Substance, Heroin, by a Person Not Registered (Misdemeanor), 35 P.S. § 780-113(a)(16);

(5) Intentionally Possessed a Schedule II Controlled Substance, Cocaine, by a Person Not Registered (Misdemeanor), 35 P.S. § 780-113(a)(16); and

(6) Firearms Not to be Carried Without a License (Felony 3rd Degree), 18 PA. C.S.A. 6106(a)(1).

CRIMINAL INFORMATION FILED FOR RECORD ON AUG. 7, 2015.

On September 2, 2015, Defendant filed a Motion to Suppress Physical Evidence to suppress the items seized from Locher's apartment and from Defendant's person on May 18, 2015. MOTION FOR OMNIBUS PRE-TRIAL RELIEF FILED FOR RECORD ON SEP. 2, 2015, pgs. 3-8. Defendant alleged the seizures were unconstitutional under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. *Id.* at pg. 3. The suppression court conducted a Suppression Hearing on October 14, 2015 and denied Defendant's Motion by an Order dated October 14, 2015 as filed for record on October 19, 2015. *See* SUPPRESSION HEARING NOTES OF TRANSCRIPT ["N.T."] (OCT. 14, 2015); ORDER DATED OCT. 14, 2015.

On December 23, 2015, the trial court held a non-jury trial before the Honorable Norman A. Krumenacker, III, and found Defendant not guilty on Counts 1 through 5 and guilty on Count 6, *supra*. *See* NON-JURY TRIAL N.T. (DEC. 23, 2015); ORDERS DATED DEC. 23, 2015. On January 28, 2016, the trial court sentenced Defendant to pay costs and a $200.00 fine as well as to undergo state imprisonment for 30 months to 72 months. SENTENCE ORDER DATED JAN. 28, 2016. On February 8, 2016, Defendant filed a timely Notice of Appeal and the trial court issued an Order directing Defendant to file a Concise Statement of Errors Complained of on Appeal. NOTICE OF APPEAL AND ORDER DATED FEB. 8, 2016. Defendant filed a timely Concise Statement on February 25, 2016. STATEMENT OF MATTERS COMPLAINT OF ON APPEAL PURSUANT TO PA. R.A.P. 1925 FILED FOR RECORD ON FEB. 25, 2016 ["CONCISE STATEMENT"].

## DISCUSSION

On appeal, Defendant challenges the suppression court's denial of Defendant's Motion to Suppress Physical Evidence by alleging that Defendant had a reasonable expectation of

privacy, Patrolman Slisz's initial warrantless entry and subsequent search of the black book bag were unlawful, and Locher's consent to search was unlawful. CONCISE STATEMENT, ¶ 1(a)-(d).

## (1) Standard of Review

The Superior Court of Pennsylvania has outlined the well-established standard of review for considering an order denying a suppression motion as follows:

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon [the court].

*Comm. v. Caple*, 121 A.3d 511, 516-517 (Pa. Super. 2015) (citations omitted). Additionally, any "questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Id.* at 517 (citing *Comm. v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003)). "In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing." *Id.* (citing *In the Interest of L.J.*, 79 A.3d 1073, 1088–1089 (Pa. 2013)).

## (2) Defendant's Expectation of Privacy

Defendant argues that he "had a protected, Fourth Amendment, reasonable expectation of privacy in a bedroom used exclusively by him." CONCISE STATEMENT, ¶ 1(a).

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., AMEND. IV; PA. CONST., ART. 1, § 8. This protection depends on "whether the person who claims the protection of the Amendment has a legitimate expectation

4

of privacy in the invaded place." *Comm. v. Caple*, 121 A.3d 511, 517 (Pa. Super. 2015) (citations omitted). Specifically:

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. Additionally, a determination of whether an expectation of privacy is legitimate or reasonable entails a balancing of interests.

*Id.* (internal citations and quotation marks omitted).

The Superior Court of Pennsylvania outlined the following factors when determining whether a defendant has a legitimate expectation of privacy in another person's home:

> (1) Possession of a key to the premises;
> (2) Having unlimited access to the premises;
> (3) Storing of clothing or other possessions on the premises;
> (4) Involvement in illegal activities conducted on the premises;
> (5) Ability to exclude other persons from the premises; and
> (6) Expression of a subjective expectation of privacy in the premises.

*Comm. v. Bostick*, 958 A.2d 543, 553 (Pa. Super. 2008) (quoting *Comm. v. Govens*, 632 A.2d 1316, 1319 (Pa. Super. 1993) (citations omitted)).

Specifically, a defendant who is more than a "casual visitor" to another's residence "must demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy." *Id.* at 552-553. *See e.g. id.* at 556 (concluding that the defendant had a reasonable expectation of privacy where he stayed there on the day of the arrest, stayed overnight on weekends, contributed to the household bills, received mail there, ate meals there, had laundry done there on occasion, and had free entry into the residence) (citations omitted); *Comm. v. Davis*, 743 A.2d 946, 950 (Pa. Super. 1999) (finding that an unnamed lessee had a legitimate expectation of privacy where he carried a key to gain access and kept his belongings, clothes, identification tag, and prescription medications).

In this case, Mary Ann Daniels, a Johnstown Housing Authority employee and manager of the Oakhurst Homes,[2] testified regarding the circumstances surrounding the apartment located at 512 Daniel Street. SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 6-7, 11. For example, Daniels testified that Jason Locher was the only named tenant on the lease and was only permitted to have two keys to his residence, both of which were labeled "do not duplicate." *Id.* at pg. 7. Daniels further testified that Locher was not permitted to sublet the apartment or to have overnight guests more than 14 days a year. *Id.* at pgs. 8-10 (quoting COMMONWEALTH'S EX. NO. 1, "Residential Dwelling Lease," pg. 5, §§ K, L(d)). Daniels also testified that Locher never requested approval for a visitor over 14 days. *Id.* at pg. 10. Additionally, Daniels described the "back room" (where Defendant supposedly stayed) as a "laundry facility" without a lock with barely enough space for a single bed. *Id.* at pgs. 10-11.

Locher further testified that he kept his extra single bed (without linens) and old television in the laundry room. *Id.* at Locher allowed Defendant to stay in the room without paying rent, but there was no lock on the door and Defendant was not permitted to keep Locher from using the room. *Id.* at pgs. 17-18. Specifically, Locher stated, "if he would have told me that [I could not use the room,] I would have looked at him and said 'it's my house, I'll do what I want, like, go in any kind of room that I wanted.'" *Id.* at pg. 18. Locher gave Defendant a key to his apartment "a couple times," but not on May 18, 2015. *Id.* at pgs. 17-18. Locher also allowed at least two other individuals to stay in the "laundry room." *Id.* at pgs. 19-20.

Additionally, although Locher admitted that Defendant had his permission to frequently stay in the back room and kept items of clothing there, *id.* at pg. 21, the circumstances of this incident contradict those statements. For example, the burglary report, Patrolman Slisz, and Locher all noted that Defendant was observed carrying a black book bag. AFFIDAVIT, pg. 1, ¶¶ 1-6; SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 36-38. Based on these observations, Defendant kept belongings *on his person* and not permanently in the back room. Yet, when Patrolman Slisz asked Defendant about the black book bag while standing *in* the back room, Defendant denied ownership of it. AFFIDAVIT, pg. 1, ¶ 4; SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 41-42. Thus, by Defendant's own words, he proffered that there were belongings in

---

[2] The apartment at 512 Daniel Street in Johnstown, Pennsylvania is located within the Oakhurst Homes, which is owned by the Johnstown Housing Authority. SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 5-6.

the back room that did not belong to him. By this admission, others would have had access to the back room and/or kept their belongings there. The surrounding facts of either scenario do not support a finding that Defendant was more than a "casual visitor" and had a reasonable expectation of privacy in the back room.

Therefore, the suppression court submits that Defendant lacked a legitimate expectation of privacy and therefore, has no standing to appeal the suppression of any evidence seized at Locher's apartment. However, the suppression court addresses Defendant's remaining issues should the Superior Court find that Defendant had a reasonable expectation of privacy.

## (3) Warrantless Entry and Plain View

Defendant claims that "no exigent circumstances justified the officer's warrantless intrusion through the kitchen to the rear bedroom in pursuit of [D]efendant." CONCISE STATEMENT, ¶ 1(c).

Generally, "a search warrant is required before police may conduct any search[,]" and thus, a warrantless search is presumptively unreasonable. *Comm. v. Caple*, 121 A.3d 511, 517 (Pa. Super. 2015) (citations omitted). However, the existence of "exigent circumstances" constitutes an exception to the warrant requirement. *Id.* at 518. The Superior Court of Pennsylvania explained:

> The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.
>
> \*　　\*　　\*
>
> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling.

*Id.* (citation and emphasis omitted). In determining exigent circumstances, the court must consider the totality of the circumstances in each particular case. *Id.* (citations omitted). If exigent circumstances are established, then a warrantless entry is considered lawful. Additionally, any evidence found in the "plain view" of the police may be seized if: (1) the incriminating character of the item is immediately apparent; and (2) the officer has a lawful

7

right of access to the object itself, i.e. by a lawful warrantless entry. *Id.* at 520 (citation omitted).

In this case, Johnstown police officers were dispatched to 512 Daniel Street for a burglary in progress by two African American males, including one wearing a black book bag, who climbed through a rear window of an apartment. SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 36-37. Upon arrival, three police officers set up a perimeter and Patrolman Slisz observed through the window two African American males matching the description given in the burglary report. *Id.* at pg. 37. The police officers knocked on the door, Locher opened it, and Defendant, while wearing the black book bag, "walked fastly [sic] to a slow run through the kitchen into a back bedroom where [Patrolman Slisz] lost sight of him." *Id.* at pgs. 37-38. Patrolman Slisz was "unaware for officer safety what might happen" because "[w]hen we walk into the room and someone takes off to a back bedroom[,] it's somewhat suspicious." *Id.* at pgs. 38, 52. Patrolman Slisz then conducted a protective sweep, followed Defendant to the back room, and observed a black book bag and a firearm lying in plain view on top of the bed. *Id.* at pgs. 38-39. Patrolman Slisz testified that he had prior knowledge of Defendant as a convicted felon who should not be near a firearm. *Id.* at pg. 41.

Locher collaborated Patrolman Slisz's testimony by testifying that when Patrolman Slisz first entered the apartment, he stated that a burglary in progress was reported at that location. *Id.* at pg. 25. Locher also testified that Defendant "ran into the bedroom" as the police officers were entering the apartment. *Id.* at pgs. 26-27. Further, Locher allowed Patrolman Slisz to enter and search the apartment. *Id.* at pgs. 20, 26. *See also id.* at pg. 40 (referencing COMMONWEALTH'S EX. NO. 2, "Consent to Search Form"). Therefore, the suppression court submits that the police officer's warrantless entry of the back room was lawful due to exigent circumstances and the firearm lying on the bed was in plain view of that lawful entry.

## (4) Search of the Book Bag

Defendant suggests that "the officer's warrantless search by opening a book bag in the rear bedroom was beyond the scope of any consent and the contraband nature of a book bag is not apparent." CONCISE STATEMENT, ¶ 1(d).

8

In Pennsylvania, "a criminal defendant has no privacy expectation in property that he has abandoned." *Comm. v. Barnette*, 760 A.2d 1166, 1170 (Pa. Super. 2000) (citation omitted). However, a police officer may not commit an improper or unlawful act prior to the abandonment or relinquishment of the evidence. *Id.* The Superior Court of Pennsylvania further explained:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Id.* at 1170-1171 (quoting *Comm. v. Clark*, 746 A.2d 1128, 1133-1134 (Pa. Super. 2000) (original citation and emphasis omitted)).

In this case, Defendant had no expectation of privacy in the back room, *discussed supra*, and specifically denied ownership of the book bag despite the burglary reports, Locher, and the police seeing him with it. AFFIDAVIT, pg. 1, ¶¶ 1-6; SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 36-38, 41-42. Moreover, Locher consented to the search of his apartment, *see infra*, including the black book bag located in the back room. *Id.* at pgs. 20, 26. *See also id.* at pg. 40 (referencing COMMONWEALTH'S EX. NO. 2, "Consent to Search Form"). Therefore, the suppression court submits that Defendant relinquished and abandoned any privacy expectation he may have held in the black book bag, and thus, cannot challenge the search thereof.

## (5) Third Party Consent

Defendant claims that "the initial warrantless entry into the bedroom was unlawful and the product of unlawful consent by a third party." CONCISE STATEMENT, ¶ 1(b). In the alternative to the suppression court's findings that Defendant had no expectation of privacy in the back room or the book bag and that the officer's warrantless entry was lawful, the suppression court suggests that Locher, the leased tenant of the searched premises, lawfully consented to the search of 512 Daniel Street. *See* AFFIDAVIT, pg. 2, ¶ 7.

9

An individual may voluntarily consent to a search only as "the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Comm. v. Basking*, 970 A.2d 1181, 1188 (Pa. Super. 2009) (citations omitted). A third party has actual authority to consent to a search if he "possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)). "Common authority" is "based on mutual use of the property rather than a mere property interest." *Id.* at 1188-1189 (citations omitted). For example, a landlord has no implied common authority merely based on his property interest because he does not share equal rights of use and enjoyment with the tenant. *Id.* (citation omitted).

In this case, Locher had actual and common authority to consent to the search as the sole tenant of the apartment in actuality and as permitted by the lease. SUPPRESSION HEARING N.T. (OCT. 14, 2015), pg. 6. Moreover, Locher specifically testified that he let Patrolman Slisz enter the apartment, had no problem with his entry, and consented to the search of the apartment. *Id.* at pgs. 20, 26. *See also id.* at pg. 40 (referencing COMMONWEALTH'S EX. NO. 2, "Consent to Search Form"). Therefore, the suppression court submits that Locher, as the sole tenant, had authority to consent to the search of his apartment.

### (6) Summary

In addition to the discussion above, the suppression court submits the following summary it placed on the record below to support of its denial of Defendant's Motion to Suppress Physical Evidence:

> Looking at the entire situation, here is what I see. The officers are nearby when a 911 call comes in. The officer said it only took a minute or two to get over there, but I know it may well have been more than that. But even presuming that it isn't, but in 15 minutes Officer Slisz has a signed consent.
>
> The period between the 911 call, arriving at the house, getting in place, observing, seeing the three men inside entering, watching [Defendant] slip away, these things aren't done in a calm situation, in a calm environment in a courtroom. The officers are there. A burglary in progress was reported. And is it surprising that the people that are there say there is no burglary? Officer Slisz didn't know who Mr. Locher was. He didn't know if he had any custodial rights in that house. He

10

didn't know whether the other two individuals, Mr. Hornbuckle or [Defendant] had those rights, and then [Defendant] slips away.

I conclude at that time[,] clearly Officer Slisz had all sorts of justification to make sure that nothing was being secreted, and more importantly[,] that his safety was not at risk, his or that of any of the other officers. He brings [Defendant] back. He then talks more with Mr. Locher, then gets his consent. Even presuming that the consent was given after that initial contact, I think there was plenty of justification for what Officer Slisz did up to that point.

And then what authority does [Defendant] have? Does he have any custodial rights at all as to that property? No. He's a visitor. There is nothing that he has, no privacy right that I can see, none by the lease. And in fact, the lease says he can't have any such authority.

And he certainly doesn't have rights superior to those of Mr. Locher. Mr. Locher allowed him to s[t]ay. I question whether there is any common authority at all, but even if there is, I conclude that Mr. Locher had the authority to permit the general search. And what is found? Two guns.

Officer Slisz then says that as this progressed he realized that [Defendant] was a convicted individual who would not be authorized to own that gun. He knew of that through his Drug Task Force work and he said another officer indicated that there is a burglary as well, I believe, if I recall the testimony accurately.

But at that point[,] I think he clearly has the right. He sees the guns, what vindication of his concern to secure officer safety than seeing there was a gun and a second gun when the bag was searched. [Defendant] denies that the bag is his. Consent was already given by Mr. Locher to search. The gun found in the bag I believe was one that was found with proper authority and proper consent.

*     *     *

So that having been said, on consideration of [Defendant's Motion to Suppress Physical Evidence], the same [is] denied.

SUPPRESSION HEARING N.T. (OCT. 14, 2015), pgs. 79-81. Therefore, the suppression court submits that for all of the foregoing reasons, its denial of Defendant's Motion to Suppress Physical Evidence should be affirmed.

11

## CONCLUSION

For the reasons set forth above, the suppression court's Order dated October 14, 2015 and filed for record on October 19, 2015 should be AFFIRMED.

RESPECTFULLY SUBMITTED,

Timothy P. Creany, S.J.

COPIES TO:
☐ DEF.   ☐ C & F
PS ☑ DA   ☐ SHERIFF
Mail ☑ ATTY. McQuillan ☐ OTHER
☐ PO
☐ PD
☐ JAIL
☐ JUDGE
☐ CA

FILED FOR RECORD
2016 APR 13 AM 9: 53
CLERK OF COURTS
CAMBRIA COUNTY, PA

12