CIRILLO, Judge:
 

 William L. Grimes appeals from the judgment of sentence entered in the Court of Common Pleas of Bedford County. We affirm in part and reverse in part.
 

 On April 18, 1992, Chief Wayne Emerick and Officer Brian Fletcher of the Everett Borough Police Department, while parked, heard someone revving the engine of a blue Chevrolet pickup truck and yelling in front of Granatelli’s Bar. After approximately five minutes of continuous engine revving, the officers decided to investigate. Upon arriving at the vehicle, Chief Emerick observed two individuals inside, Grimes, who was in the driver’s seat, and Leroy Wallace, who was asleep in the passenger’s seat and who had apparently vomited on the passenger side door. Chief Emerick then opened the driver’s side door and asked Grimes what he was doing. Before Grimes could answer, Chief Emerick smelled alcohol on his breath and noticed that his eyes were watery and his complexion flushed. Chief Emerick asked Grimes to step out of the vehicle and inquired whether Grimes had been drinking. Grimes replied that he had been drinking that evening at Granatelli’s Bar, located just across the street from where his truck was parked. As Grimes exited the truck, Chief Emerick noticed several empty beer bottles, a Pepsi can fashioned into a pipe, a spoon, and a paper bag containing white powder.
 
 [1]
 
 The Chief then asked Grimes if he would consent to a blood/alcohol test. Grimes refused and indicated that he had a suspended driver’s license.
 

 At this point, Chief Emerick read Grimes his
 
 Miranda
 
 rights and placed him under arrest. Grimes was charged with possession of a controlled substance, possession with intent to deliver a controlled substance, possession of drug paraphernalia, driving under the influence of alcohol, and driving under the influence of alcohol and a controlled substance. Later that
 
 *539
 
 evening, Chief Emerick took the statement of Leroy Wallace. Wallace told Chief Emerick that the cocaine in the paper bag found in the pickup truck was supplied by Grimes.
 

 On December 7, 1992, the case proceeded to a jury trial before the Honorable Daniel L. Howsare, President Judge. At the close of evidence, the jury found Grimes not guilty of possession with intent to deliver, but guilty on all other charges. Post-verdict motions were filed and denied and President Judge Howsare sentenced Grimes to a term of five to twelve months imprisonment for possession of a controlled substance and possession of drug paraphernalia, and to a term of one to twenty-three and one-half months imprisonment for driving under the influence of alcohol and driving under the influence of alcohol and a controlled substance, to run consecutively with the previous sentence. On December 28, 1992, Grimes filed motions for a new trial and in arrest of judgment, which, following argument, were denied. This appeal followed.
 

 Grimes presents the following issues for our consideration:
 

 (1) Was Grimes denied adequate representation of counsel when trial counsel failed to move to suppress the search of his vehicle, his arrest, and any statements made thereafter?
 

 (2) Was there insufficient evidence to support the verdict of driving under the influence of alcohol?
 

 (3) Did the trial court erroneously permit the Commonwealth to impeach its own witness with prior inconsistent statements?
 

 (4) Did the trial court err by instructing the jury that it could consider the prior inconsistent statements of the prosecution witness as substantive evidence for the prosecution?
 

 (5) Did the trial court err by permitting Chief Emerick to testify as an expert?
 

 (6) Did the trial court err by permitting Chief Emerick to testify as to the ultimate issue?
 

 
 *540
 
 (7) Did the trial court err by failing to enforce Rule 305 of the Pennsylvania Rules of Criminal Procedure as to the discovery of the expert witness’ qualifications and reports?
 

 Grimes first argues that he received ineffective assistance of counsel when trial counsel failed to move to suppress evidence from the search of his vehicle, his subsequent arrest, and any statement made after his arrest. We disagree.
 

 Our standard of review when evaluating a claim of ineffective assistance of counsel is well settled. We presume that trial counsel is effective and place on the defendant the burden of proving otherwise.
 
 Commonwealth v. Williams,
 
 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to determine whether the issue underlying the claim is of arguable merit.
 
 Commonwealth v. Johnson,
 
 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis.
 
 Id.
 
 Even if the underlying claim has merit, the defendant still must establish that the course of action chosen by his counsel had no reasonable basis designed to effectuate the client’s interests and, finally, that the ineffectiveness prejudiced his right to a fair trial.
 
 Id.; Commonwealth v. Pierce,
 
 515 Pa. 153, 527 A.2d 973 (1987).
 

 Here, Grimes contends that his trial counsel was ineffective in failing to move to suppress any and all items found in the truck and any
 
 ipre-Miranda
 
 warning statements made by him, because “clearly the officer had no reasonable cause [sic] to believe that the defendant was engaged in any criminal activity.” We first note that Grimes has failed to cite any authority to support his position.
 
 See Commonwealth v. Sanford,
 
 299 Pa.Super. 64, 445 A.2d 149 (1982). Nonetheless, his claim is without merit.
 

 On the morning in question, Chief Emerick and Officer Fletcher heard someone revving the engine of a late model pickup truck for approximately five minutes in front of Granatelli’s Bar. The officers approached the truck and found two individuals positioned inside. With the engine still being
 
 *541
 
 revved, Chief Emerick opened the driver’s side door and asked Grimes what he was doing. Immediately upon opening the door, Chief Emerick smelled alcohol on Grimes’ breath and noticed that Grimes’ eyes were very watery and his complexion flushed. Chief Emerick also noticed what appeared to be vomit on the passenger’s side door and window. At this point, Chief Emerick asked Grimes to step out of the truck and asked Grimes whether he had been drinking. Chief Emerick’s conduct was in total compliance with the law.
 

 Under
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), an individual must be warned of his or her right to remain silent before the initiation of custodial interrogation. “Custodial interrogation” includes questioning conducted “after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way,”
 
 id.
 
 at 444, 86 S.Ct. at 1612, or while he or she is the focus of an investigation.
 
 Commonwealth v. Feldman,
 
 432 Pa. 428, 432, 248 A.2d 1, 3 (1968). Warnings are not required, however, where general on-the-scene investigatory questioning is conducted to determine whether a crime has been committed or is in progress.
 
 Miranda,
 
 384 U.S. at 477-78, 86 S.Ct. at 1629-30.
 

 Here, Chief Emerick’s conduct and questioning of Grimes were merely investigatory in nature. The question was not accusatory and was not intended to elicit a confession of driving under the influence of alcohol. Grimes points to nothing which would suggest that the question was asked under circumstances that were hostile or coercive. Only after smelling a strong odor of alcohol and observing Grimes’ watery eyes and flush complexion did Chief Emerick instruct Grimes to step out of the truck. Under these facts, Chief Emerick’s conduct cannot be considered a custodial interrogation.
 
 Miranda, supra; see also Commonwealth v. Kloch,
 
 230 Pa.Super. 563, 327 A.2d 375 (1974). Trial counsel, therefore, cannot be deemed ineffective for failing to move to suppress Grimes’ statement that he had been drinking at Granatelli’s Bar on the evening or early morning in question.
 
 Johnson, supra.
 

 
 *542
 
 Grimes also contends that trial counsel was ineffective for failing to move to suppress the evidence seized as a result of the warrantless search of his truck. This argument is also without merit.
 

 “The Fourth Amendment protects all citizens from unreasonable searches and seizures by government officials.”
 
 Commonwealth v. Shiflet,
 
 431 Pa.Super. 444, 447, 636 A.2d 1169, 1170 (1994). To properly seize evidence, an official must act pursuant to a valid search warrant or one of the well known exceptions to the warrant requirement.
 
 Id.
 
 at 445-49, 636 A.2d at 1170-71. When the search involves automobiles, however, the warrant requirement is somewhat relaxed.
 

 While searches and seizures conducted outside the judicial process, without prior approval by a magistrate, are generally unreasonable under the Fourth Amendment, there is an established departure from the warrant requirement for certain automobile searches based on the inherent mobility of vehicles[,] with the ... problems in obtaining a warrant prior to infringing a legitimate expectation of privacy which is accorded automobiles because of their function, and their subjection to a myriad of state regulations.
 

 Commonwealth v. Rodriquez,
 
 526 Pa. 268, 272, 585 A.2d 988, 990 (1991). In fact, under the plain view exception, evidence in plain view of the police can be seized without a warrant, if:
 

 (1) the initial intrusion is lawful — the officer does not violate the Fourth Amendment in arriving at the place from which the evidence can be plainly viewed;
 

 (2) the incriminating character of the object is immediately apparent; and
 

 (3) the officer has a lawful right of access to the object.
 

 Commonwealth v. McCullum,
 
 529 Pa. 117, 132, 602 A.2d 313, 320 (1992) (citing
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990));
 
 [2]
 

 see also Commonwealth v. Hendrix,
 
 426 Pa.Super. 616, 627 A.2d 1224 (1993);
 
 Commonwealth v. Parker,
 
 422 Pa.Super. 393, 619 A.2d 735 (1993).
 

 
 *543
 
 Here, Chief Emerick was lawfully in a position from which he could observe the contraband, as he was lawfully investigating a possible case of driving while under the influence of alcohol. Next, when Chief Emerick looked into the truck and observed the white powder, the flattened Pepsi can, the spoon, etc., probable cause existed to believe that these items were evidence of a crime so as to justify a search and seizure.
 
 Parker, supra.
 
 Because of the foregoing, trial counsel cannot be deemed ineffective for failing to file meritless motions to suppress.
 
 Johnson, supra.
 

 Grimes next argues that there was insufficient evidence to support the verdict of driving under the influence of alcohol or a controlled substance. 75 Pa.C.S.A. § 3731. Specifically, Grimes asserts that the Commonwealth failed to adduce sufficient evidence that he was in physical control of the movement of the vehicle, as the truck was parked and incapable of being started. We disagree.
 

 In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.
 
 Commonwealth v. Swann,
 
 431 Pa.Super. 125, 128-29, 635 A.2d 1103, 1105 (1994).
 

 The offense of driving under the influence of alcohol or a controlled substance provides, in pertinent part:
 

 (a) Offense defined. — A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
 

 (1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;
 

 (2) while under the influence of any controlled substance ... to a degree which renders the person incapable of safe driving.
 

 75 Pa.C.S.A. § 3731(a)(1), (2).
 

 As Grimes does not dispute the fact that he was under the influence of both alcohol and controlled substances at the
 
 *544
 
 time of his arrest, our task is to determine whether the Commonwealth adduced sufficient evidence which shows that Grimes drove, operated, or was in actual physical control of the movement of his vehicle. It is well settled that in order to be convicted under this statute, the Commonwealth need not prove that the vehicle was in motion at the time of the incident, but rather, must simply prove that the defendant was in actual physical control over the vehicle, and was, thus, a threat to public safety.
 
 Commonwealth v. Crum,
 
 362 Pa.Super. 110, 113-17, 523 A.2d 799, 801-02 (1987). The concept of “actual physical control” involves the control of the movements of either the machinery of a motor vehicle or of the management of the vehicle itself, without a requirement that the entire vehicle be in motion.
 
 Commonwealth v. Bobotas,
 
 403 Pa.Super. 136, 141-43, 588 A.2d 518, 521 (1991).
 

 In the case at hand, the Commonwealth has met this burden. Chief Emerick testified that he observed Grimes revving the engine of the truck for some five minutes before investigating the situation. Moreover, when Chief Emerick arrived at the scene, he witnessed Grimes sitting in the driver’s seat of the pickup truck continuing to rev the engine. Accordingly, there was sufficient evidence to show that Grimes was in physical control of the truck.
 
 Compare Crum,
 
 362 Pa.Super. at 113-17, 523 A.2d at 801-02 (finding that evidence that defendant was found slumped across the front seat of a car with the motor running and lights on was sufficient to support the inference that the defendant was in control of the machinery of the motor vehicle as is required for a conviction of driving under the influence of alcohol)
 
 with Commonwealth v. Price,
 
 416 Pa.Super. 23, 610 A.2d 488 (1992) (holding that evidence that defendant was sitting in the driver’s seat of the car, which was not running, and held keys to trunk in his hand did not rise to the level of actual physical control necessary to support a conviction for driving under the influence of alcohol).
 

 Grimes next argues that the trial court erred both in permitting the Commonwealth to impeach its own witness, Leroy Wallace, with prior inconsistent statements, and in allowing such statements to be admitted as substantive evi
 
 *545
 
 dence. This argument arose from the following factual situation: On the night of Grimes’ arrest, Chief Emerick took Wallace’s statement regarding the ownership and use of the cocaine discovered in Grimes’ truck. At this time, although under the influence of both cocaine and alcohol, Wallace stated that the cocaine belonged to Grimes and that earlier in the evening both he and Grimes smoked some of it. Wallace subsequently signed this written statement.
 

 At trial, Wallace testified as a Commonwealth witness. When asked to whom the cocaine found in Grimes’ vehicle belonged, Wallace recanted his written statement, claiming that the cocaine did not belong to Grimes, but belonged to his brother.
 
 [3]
 
 The Commonwealth then, over the objection of defense counsel, confronted Wallace with his earlier statement and attempted to use the earlier statement both to impeach Wallace’s current testimony and as substantive evidence.
 

 Grimes first argues that the Commonwealth was not sufficiently surprised by Wallace’s recantation to enable it to impeach the testimony through the use of his written statement. We disagree.
 

 It is well settled that it is within the trial court’s discretion to permit a party to impeach its own witness with prior inconsistent statements. Such discretion is properly invoked after the trial court considers the following factors:
 

 (1) whether the testimony was unexpected;
 

 (2) whether the testimony was contradictory;
 

 (3) whether the testimony was harmful to the party calling
 

 the witness and beneficial to the opposing side; and
 

 (4) whether the scope of cross-examination was excessive.
 

 Commonwealth v. Waller,
 
 498 Pa. 33, 39, 444 A.2d 653, 656 (1982). The factor of surprise, moreover, should be liberally construed and not raised to an indispensable requirement.
 
 Commonwealth v. Brady,
 
 510 Pa. 123, 134-35, 507 A.2d 66, 72 (1986). Accordingly, a party may impeach one’s own witness without the element of surprise, when truth and justice so require.
 
 Id.
 

 
 *546
 
 In the case at hand, the trial court did not err in permitting the Commonwealth to impeach Wallace’s recanted testimony through the use of his prior inconsistent statement to Chief Emerick. Although the Commonwealth was not strictly surprised by Wallace’s testimony, all other elements were met and, given the fact that the prosecution first learned of Wallace’s recantation the previous day, justice requires that the Commonwealth have the opportunity to confront him with his earlier statement.
 

 Next, Grimes claims the trial court committed reversible error in admitting the prior inconsistent statement as substantive evidence. Specifically, Grimes argues that, because the Commonwealth did not sufficiently validate the reliability of Wallace’s earlier statement, the Commonwealth was not entitled to its admission as substantive evidence. We agree with this contention.
 

 In the seminal case of
 
 Commonwealth v. Brady, supra,
 
 the Pennsylvania Supreme Court announced that the “prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein.”
 
 Brady,
 
 510 Pa. at 130-32, 507 A.2d at 70. Thus, under
 
 Brady,
 
 when confronted with a witness who recants a previous statement on the stand, a party has the unfettered right to admit the earlier statement as substantive evidence.
 

 The
 
 Brady
 
 rule, however, has been significantly modified by our Supreme Court. This change, brought on by an onslaught of criticism over
 
 Brady
 
 expansiveness, now requires that only those prior inconsistent statements “that are demonstrably reliable and trustworthy” may be admitted as substantive evidence.
 
 Commonwealth v. Lively,
 
 530 Pa. 464, 469-71, 610 A.2d 7, 10 (1992). To this end, the
 
 Lively
 
 Court required as a requisite to admissibility, that the prior statement be:
 

 (1) given under oath at a formal legal hearing;
 

 (2) reduced to a writing which was signed or adopted by the witness; or
 

 
 *547
 
 (3) a contemporaneous verbatim recording of the witness’s statements.
 

 Id.; see also Commonwealth v. Johnson,
 
 536 Pa. 153, 638 A.2d 940 (1994) (holding that, to be admissible, a prior inconsistent statement must have been uttered under highly reliable circumstances which would render inferences to be drawn from it more probable than not).
 

 Applying this standard to the case at hand, we are convinced that the Commonwealth did not sufficiently prove that Wallace’s statement on the night in question was demonstrably reliable and trustworthy.
 
 Johnson, supra.
 
 The statement was taken while Wallace was under the influence of both alcohol and cocaine. Moreover, Wallace had consumed so much of these substances that he was unconscious and lying in his own vomit, when initially observed by Chief Emerick. To admit this statement as substantive evidence of Grimes’ possession of the cocaine found in his vehicle flies in the face of the reliability requirement announced in
 
 Lively, supra,
 
 and reaffirmed in
 
 Johnson, supra,
 
 and will not be tolerated. Accordingly, as Wallace’s previous statement was instrumental in connecting Grimes to both the cocaine and drug paraphernalia found in the pickup truck, we are obliged to vacate the judgment of sentence and remand for a new trial on the possession counts.
 
 [4]
 

 See, e.g., Johnson, supra
 
 (holding that a statement made by a six-year-old to a four-year-old carries no indicia of reliability when the declarant denies ever making the statement, the listener has no recollection of when or under what circumstances the statement was made, and the listener is related to the defendant/appellant).
 

 Although we vacate and remand this case for a new trial on the possession counts, we still question the efficacy of
 
 Brady
 
 and its progeny. We believe that the Pennsylvania Supreme Court, in deciding
 
 Brady,
 
 mistakenly discarded a well tried rule of jurisprudence.
 

 
 *548
 
 Before the Court’s decision in
 
 Brady,
 
 it had long been the law of this Commonwealth that prior inconsistent statements were admissible only for impeachment purposes.
 
 See Commonwealth v. Gee,
 
 467 Pa. 123, 354 A.2d 875 (1976). The primary concern was, and still is in many jurisdictions, that the use of prior inconsistent statements for substantive purposes created hearsay problems. The concern was that hearsay generally, and prior inconsistent statements specifically, are too unreliable to be admitted as substantive evidence, because the declarant of the prior inconsistent statement was not under oath, not subject to cross-examination, and not in the presence of the trier of fact when the statement was made.
 
 Id.
 
 at 134-35, 354 A.2d at 880; 3A Wigmore, Evidence, § 1018 (Chadbourn rev. 1970).
 

 It is no evidence whatever that the facts are as he formerly stated them; and, though appeals are sometimes made to a jury that it is so, it is the province of the Court to inform them that it is
 
 not
 
 so.
 

 Gould v. Norfolk Lead Co.,
 
 63 Mass. (9 Cush.) 338, 346 (1855) (emphasis added).
 

 Justice Larsen, writing for the majority in
 
 Brady,
 
 opined that “the usual dangers of hearsay are largely nonexistent where the witness testifies at trial.”
 
 Brady,
 
 510 Pa. at 129, 507 A.2d at 69 (citing
 
 California v. Green,
 
 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970)). Specifically, the majority intimated that the fact that cross-examination is not contemporaneous with the out-of-court statement is of no concern, because the availability of cross-examination at trial cures this alleged defect.
 
 Id.
 
 Finally, the
 
 Brady
 
 majority stated that the former statement made by the declarant may be considered to “possess superior indicia of reliability” when compared to the latter, because the former statement was made closer in time to the event in question, when, arguably, the memory is fresher and the opportunity for fabrication is abated.
 
 Id.
 
 at 130, 507 A.2d at 69.
 

 This court has considered the criticisms of the orthodox rule, but is not persuaded that this Commonwealth should
 
 *549
 
 have departed from the well entrenched former rule. We do not agree that an in-court cross-examination, sometimes several years after the former statement was made, and certainly after the declarant has had time to ponder both responses, can replace contemporaneous cross-examination. In-court cross-examination can be essentially trumped, for example, where the declarant comes into court and simply avers a loss of memory.
 

 We also disagree with the argument that the out-of-court statement “possesses superior indicia of reliability” to the in-court statement.
 
 Id.
 
 For instance, errors can arise in the initial transcription of the statement, in the misstatement by the police officer preparing the statement for the declarant’s signature, or from the surrounding circumstances of the questioning — e.g., leading questions asked by the police officers— which may cause confusion and/or misunderstanding on the part of the declarant. Regarding this last concern, the Supreme Court of West Virginia reasoned that, “[fjrequently, witnesses in criminal cases are implicated in the criminal activity at issue ... and the prosecutorial authorities can induce fear, a sense of guilt, and panic, in such a way as to cause distortion of facts.”
 
 State v. Spadafore,
 
 159 W.Va. 236, 220 S.E.2d 655, 661 (1975).
 

 Notwithstanding the hearsay problems in admitting prior inconsistent statements for substantive purposes, this court is most concerned with the possibility of unfairness to defendants arising from
 
 Brady
 
 and its progeny. Offering such evidence to prove the truth of the matter asserted alleviates the Commonwealth’s burden of proving,
 
 in court,
 
 every element of the crime with which the defendant is charged, and makes it possible for defendants to be convicted upon the presentation of unsworn testimony. It is fundamentally unfair to allow defendants to be convicted upon statements the veracity of which the declarant refuses to affirm in a judicial proceeding.
 

 We affirm in part and reverse in part.
 

 ROWLEY, President Judge, concurs in the result.
 

 [1]
 

 . Subsequent analysis determined that the bag contained 19.9 grams of cocaine.
 

 [2]
 

 . We note that in
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court eliminated the inadvertence requirement from the plain view exception analysis.
 

 [3]
 

 . The district attorney was made aware of this fact one day before calling Wallace as a witness at trial.
 

 [4]
 

 . Because we vacate the judgment of sentence and remand with respect to the possession counts, we need not address Grimes’ remaining contentions.