J-S57009-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSE PASTRANA, | : | |
| | : | |
| Appellant | : | No. 2508 EDA 2013 |

Appeal from the Judgment of Sentence August 30, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0003183-2013

BEFORE:  DONOHUE, MUNDY and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED OCTOBER 03, 2014**

Jose Pastrana ("Pastrana") appeals from the judgment of sentence entered following his convictions of attempted theft, receiving stolen property, possession of an instrument of crime, and criminal mischief.[1]  We affirm.

Pastrana challenges only the trial court's denial of his motion to suppress statements made to the police. In reviewing the denial of a suppression motion, our review is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. ***Commonwealth v. Williams***, 73 A.3d 609, 613 (Pa. Super. 2013) (citation omitted).  We may reverse only if the legal conclusions drawn therefrom are in error.  ***Id.***  Additionally, since the

---

[1] 18 Pa.C.S.A. §§ 901, 3921, 3925, 907, 3304.

Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Id.*

The evidence presented at the suppression hearing, when considered in the light most favorable to the Commonwealth, establishes that at approximately 12:40 in the morning on February 20, 2013, Officer Michael James received a radio call reporting that a Hispanic male wearing a black knit cap was attempting to steal a white truck that was parked on the side of Gonzalez Auto Sales, in the area of Third and Allegheny Avenues in Philadelphia. N.T., 8/14/13, at 7-9. When he arrived at that location, Officer James observed Pastrana exiting the passenger-side door of a white pick-up truck that was parked next to Gonzalez Auto Sales. *Id.* at 8. The truck was parked close to a fence, such that a person could not enter or exit through the driver-side door. *Id.* at 14. As Pastrana exited the truck, Officer James observed a screwdriver fall from Pastrana's person. *Id.* at 10. Officer James also observed that the truck's passenger-side window was broken and glass was on the ground around the vehicle. *Id.* at 9. A hammer was on the floor of the driver-side seat and the ignition was damaged. *Id.* Officer James then placed Pastrana in the back seat of his police vehicle while he and another officer attempted to contact the owner of Gonzalez Auto Sales. *Id.* at 10. The police officers and Pastrana would

remain at the scene for between 30 and 45 minutes while the officers tried to contact the owner of Gonzalez Auto Sales. During that time, Pastrana remained in the back of the police vehicle and Officer James asked him "numerous" questions, including whether Pastrana had paperwork or keys for the truck; whether he knew the owner of the truck; and why the window was broken. *Id.* at 13. Officer James was "trying to determine whether or not [Pastrana] was attempting to steal the vehicle or if the window was broken by other means or if he broke the window to enter the vehicle." *Id.* Pastrana told Officer James that a friend broke the truck's window and told Pastrana to take the truck, and that he was attempting to start it with the hammer and screwdriver. *Id.* at 11-12. At no time during this questioning was Pastrana given his *Miranda*[2] rights. *Id.* at 14-15. Once located, the owner of Gonzalez Auto Sales stated that he owned the truck; he did not know Pastrana; he did not give Pastrana permission to use the truck; and that the truck was secure and in good condition when he left it earlier that evening. *Id.* at 29.

In denying Pastrana's suppression motion, the trial court found that Officer James's questioning did not amount to an interrogation such that the *Miranda* warnings were required. *See* N.T., 8/14/13, at 20-23; Trial Court

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Opinion, 1/15/14, at 4-5.[3]  The case proceeded immediately to a bench trial, following which the trial court found Pastrana guilty of the above-mentioned offenses.  The trial court subsequently sentenced him to two years of probation.  This timely appeal followed.

Pastrana argues that the trial court erred in its determination that Officer James's questions did not constitute an interrogation, such that **Miranda** warnings were required.[4]  "A law enforcement officer must administer **Miranda** warnings prior to custodial interrogation." **Commonwealth v. Baker**, 24 A.3d 1006, 1019 (Pa. Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013).  "An 'interrogation' occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect."  **Commonwealth v. Luster**, 71 A.3d 1029, 1051 (Pa. Super. 2013), *appeal denied*, 83 A.3d 414 (Pa. 2013) (citation omitted).

---

[3] The trial court's reasons for denying the suppression motion, as expressed at the time of the suppression motion, seem to indicate that it concluded both that Pastrana was neither in custody nor subject to interrogation during his interaction with Officer James.  N.T., 8/14/13, at 20-23.  However, in authoring its opinion pursuant to Pa.R.A.P. 1925(a), the trial court concedes that Pastrana was in custody and explains its decision only in terms of its conclusion that the questioning did not amount to interrogation.  Trial Court Opinion, 1/15/14, at 4-5.

[4] In his appellate brief, Pastrana also includes argument to refute the trial court's conclusion that he was not subject to a custodial detention. Appellant's Brief at 10-13.  However, in light of the trial court's apparent concession that Pastrana was subjected to a custodial detention, we limit our discussion to Pastrana's argument regarding the nature of the questioning.

In light of this standard, we conclude that the questions Officer James posed to Pastrana while he was in the back of the police vehicle do amount to an interrogation. By his own admission, Officer James asked Pastrana questions intending "to determine whether or not [Pastrana] was attempting to steal the vehicle[.]" N.T., 8/14/13, at 13. The questions were geared toward determining whether Pastrana, who the police encountered under suspicious circumstances at the scene of an attempted theft, and who fit the description of the person reported to be perpetrating the theft, owned the vehicle or had permission to use the vehicle. Officer James was asking Pastrana questions that called for possibly incriminating answers. We conclude, therefore, that the questions were reasonably likely to elicit an incriminating response. *Luster*, 71 A.3d at 1051.

The trial court analogized the present case to ***Commonwealth v. Grimes***, 648 A.2d 538 (Pa. Super. 1994). Trial Court Opinion, 1/15/14, at 5. We do not agree that ***Grimes*** is analogous to the present situation. In ***Grimes***, police officers heard engine revving that continued for approximately five minutes. The officers decided to investigate. They located the offending car, in which Grimes was in the driver's seat and another man was asleep in the passenger's seat. One officer opened the car door and asked Grimes what he was doing. Before Grimes could answer, the officer smelled the odor of alcohol on Grimes's breath and observed his watery eyes and flushed complexion. At that point, the officer asked Grimes

to exit his vehicle and asked him if he had been drinking. When he exited his car and answered the officer's questions, the police observed various indicia of drug use in the car. Grimes was ultimately charged with and convicted of possession of a controlled substance, possession of drug paraphernalia and driving while under the influence of alcohol and a controlled substance.

On collateral appeal, Grimes argued that his counsel was ineffective for not seeking suppression of his statements and items found in his car because the police did not **Mirandize** him before questioning him. We concluded that "under these facts, [the officer's] conduct cannot be considered a custodial interrogation." **Grimes**, 648 A.2d at 541. Of importance, the facts indicate that Grimes was not in custody at the time the officer questioned him, as we found no evidence of coercive circumstances.[5] In contrast, in the present case, Pastrana was in a custodial detention when Officer James questioned him. We do not agree that this case is controlled by, or analogous to, **Grimes**.

Although the trial court erred, that does not end our inquiry. Not all erroneously admitted evidence requires reversal as, under proper circumstances, the error may be harmless. "Harmless error is a technique of

---

[5] Rather, Grimes was subjected to an investigative detention when questioned by the police. **Commonwealth v. Clemens**, 66 A.3d 373, 378-79 (Pa. Super. 2013) (holding that an investigative detention subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest.).

appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." ***Commonwealth v. Noel***, 53 A.3d 848, 857 (Pa. Super. 2012).

> The Commonwealth satisfies its burden to establish the harmlessness of an error by showing that: (1) the error did not prejudice the defendant or the prejudice was *de minimus*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Schoff***, 911 A.2d 147, 158 (Pa. Super. 2006).

The incriminating thrust of Pastrana's statement is that he was attempting to start the truck with the hammer and screwdriver. The properly admitted evidence, as detailed above, established that the police officers responded to a radio call indicating a Hispanic male attempting to steal a white truck at a particular location. When they arrived at that location, they observed a white truck with a broken window and Pastrana exiting the truck as a screwdriver fell from his possession. The officers observed that the truck's ignition had been tampered with and that there was a hammer on the floor of the driver side. We conclude that this evidence also was sufficient to establish that Pastrana was trying to start the truck with the tools found on his person and in the vehicle he was observed

exiting. Thus, "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence[,] and therefore, harmless error. *Schoff*, 911 A.2d at 158. Accordingly, the trial court's error does not entitle Pastrana to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2014