J-S04003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| EVANS ALEXANDER WYNN-TURNER | : | |
| | : | |
| Appellant | : | No. 1410 MDA 2017 |

Appeal from the Judgment of Sentence May 3, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004144-2015

BEFORE:  SHOGAN, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 01, 2018**

Appellant, Evans Alexander Wynn-Turner, appeals *pro se*[1] from the judgment of sentence entered on May 3, 2017, in the York County Court of Common Pleas.  We affirm.

The record reveals that at approximately 11:00 p.m., on April 27, 2015, York Police Officers responded to a 911 call concerning a man with a weapon at 319 East King Street.  N.T., Trial, 3/20/17, at 96; Complaint/Affidavit of Probable Cause, 4/28/15.  When officers arrived at

_____

[1] On October 2, 2017, this Court remanded this matter for a hearing at which the trial court was to determine if Appellant's waiver of counsel was knowing, voluntary, and intelligent pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).  Order, 10/2/17.  On October 23, 2017, the trial court held a *Grazier* hearing, and the trial court was satisfied that Appellant properly waived his right to counsel.  Order, 10/23/17.  However, the trial court appointed Attorney Alice Glasser as stand-by counsel.  *Id.*

the residence, they were permitted entry and spoke to Ms. Lakiesha Liggins. N.T., Trial, 3/20/17, at 97. Ms. Liggins provided a written statement informing the officers that she called the police because she had ended her relationship with Appellant, and when she told him that he needed to vacate the premises, Appellant brandished a gun and threatened to kill her. N.T., Hearing, 2/29/16, at 14-15.[2] Police then searched the home. Officer Paul Thorne testified that when he looked out of a window on the third floor, he saw a lunch box on the roof of a neighboring house. N.T., Trial, 3/20/17, at 98. Officer Thorne requested a ladder from the fire department, and with the ladder in place, he climbed to the roof and retrieved the lunch box. *Id.* at 100. Inside the lunch box, Officer Thorne discovered a loaded handgun. *Id.* at 101-104. Ms. Liggins testified at the *habeas corpus* hearing that the lunch box belonged to her son and the gun found inside was the gun that was kept at her house. N.T., Hearing, 2/29/16, at 10, 14.

Officer Matthew Tunnal testified that he located Appellant on the third floor of the house. N.T., Trial, 3/20/17, at 115. Appellant was calm until Officer Sean Haggarty informed him that the firearm had been recovered. *Id.* at 110. Appellant then began sweating profusely. *Id.* The officers

---

[2] It does not appear that this written statement was ever admitted into evidence. Rather, Ms. Liggins's April 27, 2015 statement was used for impeachment purposes as a prior inconsistent statement, and Ms. Liggins testified that she had written the statement and signed it. N.T., Hearing, 2/29/16, at 15-16.

arrested Appellant and charged him with receiving stolen property, simple assault, terroristic threats, and persons not to possess firearms.[3]

Despite the 911 call and the written statement she gave to police, Ms. Liggins later disavowed her claim that Appellant brandished a firearm, and at trial, Ms. Liggins refused to testify. In light of Ms. Liggins's recantation, the Commonwealth sought to have her testimony from Appellant's preliminary hearing and *habeas corpus* hearing admitted under Pa.R.E. 804(a)(2). Appellant did not object to the admissibility of Ms. Liggins's prior testimony.[4] However, Appellant did object to the Commonwealth having Ms. Liggins's written statement to police and the recording of her 911 call admitted into evidence. N.T., Trial, 3/20.17, at 86. The Commonwealth sought to use Ms. Liggins's written statement and 911 call as evidence that Appellant possessed the gun that was later discovered on the neighbor's roof.

After consideration, the trial court concluded that the written statement could be used for impeachment purposes as a prior inconsistent

---

[3] 18 Pa.C.S. § 3925(a), 18 Pa.C.S. § 2701(a)(3), 18 Pa.C.S. § 2706(a)(1), and 18 Pa.C.S. § 6105(a)(1), respectively.

[4] A declarant is considered unavailable as a witness if the declarant refuses to testify about the subject matter despite a court order to do so. Pa.R.E. 804(a)(2). When the declarant is unavailable, the declarant's prior testimony is admissible where it is offered against a party who had a "full and fair" opportunity to examine the witness. Pa.R.E. 804(b)(1) and comment thereto (citing **Commonwealth v. Bazemore**, 614 A.2d 684 (Pa. 1992)).

statement[5] and the 911 call was admitted as an excited utterance under Pa.R.E. 803(2). N.T., Trial, 3/20/17, at 88-90; Memorandum Denying Post-Sentence Motion, 8/31/17, at 3-5.

Despite Ms. Liggins's refusal to testify at trial and recantation of her statement that Appellant had pointed a gun at her, the record reveals that she did admit calling 911 on the night in question. N.T., Preliminary Hearing, 6/29/15, at 6. Additionally, Ms. Liggins testified previously that Appellant had a gun, threatened to kill her, and that the gun the police retrieved was the gun that was kept at her house. *Id.* at 6-9, 15. However, Ms. Liggins stated that the gun belonged to a former paramour, and she emphasized that the gun was not discovered inside her house. *Id.* at 14-15.

---

[5] Specifically, the trial court noted that it is within its discretion to permit a party to impeach its own witness with a prior inconsistent statement and stated as follows:

> Such discretion is properly invoked after the trial court considers the following factors:
>
> (1) whether the testimony was unexpected;
>
> (2) whether the testimony was contradictory;
>
> (3) whether the testimony was harmful to the party calling the witness and beneficial to the opposing side; and
>
> (4) whether the scope of cross-examination was excessive.

Memorandum Denying Post-Sentence Motion, 8/31/17, at 4-5 (quoting ***Commonwealth v. Grimes***, 648 A.2d 538, 543-544 (Pa. Super. 1994) (citation omitted)).

On March 22, 2017, a jury found Appellant guilty of persons not to possess firearms and acquitted him of the remaining charges. On May 3, 2017, the trial court sentenced Appellant to a term of four to eight years of incarceration. Appellant filed timely post-sentence motions that were denied on August 31, 2017. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for this Court's consideration:

1. Was the verdict rendered impermissibly inconsistent?

2. Was the evidence presented at trial so patently unreliable and contradictory, that the jury's verdict could only have been arrived at through speculation and conjecture, making the evidence presented insufficient to establish guilt beyond a reasonable doubt?

3. Did the trial court abuse its discretion when it admitted an inconsistent written statement of an unavailable witness as substantive evidence?

4. Was Appellant['s] right to confront and cross-examine adverse witnesses as guaranteed by the [S]ixth [A]mendment [to] the United States Constitution, and Article 1, § 9 of the Pennsylva[n]ia Constitution violated by the admission into evidence of the inconsistent written statement of an unavailable witness?

5. Did the trial court abuse its discretion when it admitted an excited utterance into evidence without the proper foundation being laid for its admission, and only to show that an exciting event may have occurred?

6. Was Appellant['s] right to confront and cross-examine adverse witnesses as guaranteed by the [S]ixth [A]mendment [to] the United States Constitution, and Article 1, § 9 of the Pensylvai[n]a Constitution violated by the admission into

evidence of the telephone call alleged to be an excited utterance?

7. Is Appellant['] s conviction a violation of due process since it was based solely on inconsistent statements of an unavailable witness?

8. Did the trial court abuse its discretion in denying Appellant['] s motion for a new trial on the grounds, that the verdict was against the weight of the evidence?

Appellant's Brief at 5.[6]

At the outset, we note that appellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. *Commonwealth v. Adams*, 882 A.2d 496, 497 (Pa. Super. 2005) (citing Pa.R.A.P. 2101). "This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure." *Adams*, 882 A.2d at 497-498 (citations omitted). Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant, and any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. *Id.* at 498 (citation omitted). If the defects in an appellant's brief are substantial, the appeal may be quashed or dismissed. Pa.R.A.P. 2101.

---

[6] For purposes of our discussion and disposition, we have renumbered Appellant's issues.

After review, we are constrained to point out that the argument portion of Appellant's *pro se* brief reveals nearly no correlation to the statement of questions presented. This failure caused our Court to scour Appellant's brief in an effort to find any argument that corresponded to the issues Appellant purported to raise on appeal. Although Appellant's brief is deficient, we conclude that it does not completely prohibit our review, and we decline to quash the appeal.

In his first and second issues, Appellant argues that the jury's verdict was improper, as it was inconsistent with the evidence. Appellant's Brief at 11-18. Appellant points out that a guilty verdict cannot stand when the Commonwealth's evidence is so lacking that the jury's verdict is the product of surmise and conjecture. Appellant's Brief at 17-18 (citing ***Commonwealth v. Farquharson***, 354 A.2d 545 (Pa. 1976), and ***Commonwealth v. Karkaria***, 625 A.2d 1167, 1170 (Pa. 1993)). However, after reviewing Appellant's brief, it is difficult to discern from paragraph to paragraph whether Appellant is challenging the weight of the evidence, the sufficiency of the evidence, or is simply unhappy with the result of the trial.

As noted above, Appellant was charged with receiving stolen property, simple assault, terroristic threats, and persons not to possess firearms, but he was convicted only of persons not to possess firearms. Appellant's argument is largely undeveloped, but he claims that the verdict cannot stand due its inconsistency and avers that his acquittal on the other charges

required the jury to engage in "surmise and conjecture." Appellant's Brief at 17-18. We conclude that no relief is due.

It is well settled that inconsistent verdicts are permissible in Pennsylvania. *Commonwealth v. Barnes*, 167 A.3d 110, 120 (Pa. Super. 2017) (citation omitted).

> [I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict. The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty.

*Id.* (citation omitted). In the case at bar, the trial court addressed this issue as follows:

> The jury, as fact finder, was free to believe all, part, or none of the evidence. The jury chose not to believe the various statements by Lakiesha Liggins that [Appellant] threatened to put her in fear of imminent serious bodily injury, or that he communicated a threat to commit any crime of violence with the intent to terrorize her. However, the jury chose to believe that the DNA and other inculpatory evidence that the Commonwealth adduced at trial proved beyond a reasonable doubt that [Appellant] possessed a firearm when he was prohibited from doing so. Moreover, as indicated in the Trial Court's "Memorandum Order Denying Defendant's Post-Sentence Motion" (hereinafter "Memorandum Order") issued and entered on August 31, 2017, there was sufficient evidence for the jury to do so. Also, the fact that the jury chose not to believe that [Appellant] knew the gun was stolen or that it had probably been stolen, thereby finding him not guilty of receiving stolen

property, is not inconsistent with a finding of guilt for the commission of the crime of Persons Not to Possess a Firearm.

Trial Court Opinion, 11/2/17, at 2. We conclude that Appellant's challenge to the inconsistent verdict is meritless.

Insofar as Appellant is challenging the sufficiency of the evidence, we review such claims under the following standard:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citation omitted).

The elements of the crime of persons not to possess a firearm are as follows:

> **(a) Offense defined.—**
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use,

control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1). The only element of this crime that Appellant disputes is possession. Appellant's Brief at 18.

As set forth above, Appellant was not in physical possession of the firearm when he was arrested; the firearm was discovered on the roof of a neighbor's house. When an individual is charged with possessing an illicit item but that item is not found on his person, the Commonwealth may establish the elements of the possessory offense through "constructive possession." *Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa. Super. 2016).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (internal citations and quotation marks omitted).

When viewed in the light most favorable to Commonwealth, the evidence presented at trial established that Appellant entered the home, brandished a firearm, and proceeded to the third floor of the home, but when police arrived, Appellant no longer possessed the firearm. Officer Paul Thorne testified that he suspected Appellant threw it out of a window on the

third floor. N.T., 3/20/17, at 97. When the officer looked out of a window on the third floor, he saw a lunch box on the roof of a neighboring house. *Id.* at 98. The firearm was discovered in a lunch box belonging to Ms. Liggins's son. Moreover, a DNA expert testified that the evidence showed that the DNA mixture from a swab of the firearm revealed that it was 70,740 times more likely that the DNA on the firearm originated from Appellant and two unknown individuals. N.T., Trial, 3/21/17, at 18. Viewed together, it was reasonable for the jury to conclude that Appellant possessed the firearm and subsequently placed the gun in the lunch box and threw it out of the window on to the neighbor's roof. We conclude that the evidence was sufficient to establish that Appellant constructively possessed the firearm.

Turning to Appellant's next several claims of error, we have endeavored to give Appellant the benefit of the doubt when it comes to his construct and development of his issues on appeal; we must point out, however, that Appellant's arguments lack focus. After our review, we conclude that the crux of Appellant's arguments is not related to the verdict—it is largely related to the trial court's evidentiary rulings.[7] In issues three through seven, Appellant somewhat more cogently challenges the evidentiary rulings concerning Ms. Liggins's written statement and 911 call.

_____

[7] We are constrained to note that it is not the duty or responsibility of this Court to formulate Appellant's claims or arguments. **Commonwealth v. Roney**, 79 A.3d 595, 610 n.12 (Pa. 2013).

Appellant alleges that Ms. Liggins's written statement and her 911 call are inadmissible hearsay. Appellant's Brief at 11-16, 19-22, 30, 32, 35, and 37-38. "Hearsay is *per se* inadmissible except as provided in the Rules of Evidence." **Commonwealth v. Hood**, 872 A.2d 175, 181 (Pa. Super. 2005). We first address Ms. Liggin's written statement.

Pennsylvania Rule of Evidence 613(b) sets forth the requirements for using extrinsic evidence of a witness's prior inconsistent statement:

> **(b) Extrinsic Evidence of a Witness's Prior Inconsistent Statement.** Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,
>
> > (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
> >
> > (2) the witness is given an opportunity to explain or deny the making of the statement; and
> >
> > (3) an adverse party is given an opportunity to question the witness.

Pa.R.E. 613(b). Pursuant to Rule 613(b), prior inconsistent statements may be admitted for purposes of impeachment. **Commonwealth v. Charleston**, 16 A.3d 505, 527 (Pa. Super. 2011), *abrogated on other grounds by* **In re L.J.**, 79 A.3d 1073 (Pa. 2013).

As noted above, the trial court allowed the written statement for impeachment purposes. It is well settled that the admissibility of evidence is left to the sound discretion of the trial court, and the trial court's ruling will not be disturbed absent an abuse of discretion. **Commonwealth v.**

***Golphin***, 161 A.3d 1009, 1022 (Pa. Super. 2017) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Commonwealth v. Henkel***, 938 A.2d 433, 440 (Pa. Super. 2007).

The written statement was used as a prior inconsistent statement to impeach Ms. Liggins's contradictory statement that Appellant did not have a gun. N.T., Hearing, 2/29/16, at 15. A non-party witness may be cross-examined on prior statements they have made when those statements contradict their in-court testimony. ***Commonwealth v. Carmody***, 799 A.2d 143, 148 (Pa. Super. 2002). As noted, prior inconsistent statements are admissible for impeachment purposes. ***Id.*** Moreover, a prior inconsistent statement may be offered as substantive evidence if it meets additional requirements of reliability: 1) was the statement given under reliable circumstances; and 2) was the declarant available for cross-examination. ***Id.***

We are cognizant that ***Carmody*** contemplates prior inconsistent statements on cross-examination. However, it is within the trial court's discretion to permit a party to impeach its own witness with prior inconsistent statements. ***Commonwealth v. Grimes***, 648 A.2d 538, 543 (Pa. Super. 1994).

Here, when Ms. Liggins refused to testify at trial, the Commonwealth sought to treat her as a hostile witness as on cross-examination. N.T., Trial, 3/20/17, at 78. The trial court did not specifically rule on this because the court opined that Ms. Liggins was refusing to answer any questions, hostile or otherwise. *Id.* The trial court then inquired if the Commonwealth had any prior statements made by Ms. Liggins. *Id.* The Commonwealth proceeded to ask Ms. Liggins if she had made that prior inconsistent statement, and she agreed that she had. *Id.* at 80. Moreover, we note that Ms. Liggins read the written statement into evidence at the preliminary hearing, and the notes of testimony from that hearing were admitted into evidence. While Ms. Liggins was clearly unavailable for cross-examination at trial, which is required for the statement to be admitted as substantive evidence under *Carmody*, she was available when the statement was read into the record at the preliminary hearing as noted by the court. N.T., Trial, 3/20/17, at 89. Ultimately, we conclude that the portions of the written statement introduced via the trial court's discretion and through prior testimony were properly admitted.

Turning to the 911 call, we note that the trial court examined the 911 call under the excited utterance exception to our rule against hearsay. Pa.R.E. 803(2).

> An excited utterance, as an exception to the hearsay rule, is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. Pa.R.E., Rule 803(2), 42 Pa. Cons.

Stat. Ann. The Comment to this exception states that this exception has a more narrow base than the exception for a present sense impression [(Pa.R.E., Rule 803(1)], because it requires an event or condition that is **startling**. *Id.*, Comment–1998 (emphasis in original). Further, an excited utterance (1) need not describe ... the startling event ...; it need only relate to it, and (2) need not be made contemporaneously with, or immediately after, the startling event.

**Hood**, 872 A.2d at 181 (emphasis in original; internal quotation marks omitted).

In **Hood**, this Court thoroughly explained the requirements, including corroboration, when admitting hearsay under the excited utterance exception to the rule against hearsay and distinguished it from the present sense impression exception:

The Commonwealth initially argues that because the declarants in the 911 tape stated that they viewed the shooting, sufficient independent corroborating evidence was provided. However, that argument has been rejected by an *en banc* panel of this Court. [**Commonwealth v. Upshur**, 764 A.2d 69, 76-77 (Pa. Super. 2000)]. In **Upshur**, when considering whether a statement qualified as an excited utterance, an *en banc* panel of this Court held that the declarant's assertion [alone] that he witnessed the event was "insufficient to establish the trustworthiness of the out-of-court statement." *Id.* As such, we cannot accept the Commonwealth's argument. **Commonwealth v. Bucknor**, 441 Pa.Super. 441, 657 A.2d 1005, 1007 n.1 (1995), *appeal denied*, 542 Pa. 640, 666 A.2d 1050 (1995) (A three judge panel cannot overrule *en banc* decisions of this Court).

However, Pa.R.E. Rule 803(1), the present sense impression exception to the rule against hearsay, does not

explicitly adopt the *Carney* rule,[8] and no case subsequent to codification has done so either. Pa.R.E., Rule 803(1), 42 Pa. Cons. Stat. Ann. The present sense impression exception, regardless of the availability of the declarant to testify at trial, allows the admission of "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter ...." Pa.R.E., Rule 803(1), 42 Pa. Cons. Stat. Ann. The observation must be made at the time of the event or shortly thereafter, making it unlikely that the declarant had the opportunity to form an intent to misstate his observation. Consequently, the trustworthiness of the statement depends upon the timing of the declaration. *Commonwealth v. Gray*, 867 A.2d 560, 570 (Pa. Super. 2005).

The rationale for this exception is that the "relative immediacy of the declaration insures that there will have been little opportunity for reflection or calculated misstatement." *Commonwealth v. Coleman*, 458 Pa. 112, 116, 326 A.2d 387, 389 (1974). "In addition, the present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone." [*Commonwealth v. Cunningham*, 805 A.2d 566, 573 (Pa. Super. 2002)].

*Hood*, 872 A.2d at 181.

In a case where this Court concluded that a 911 call was an example

of a present sense impression, we explained as follows:

The present sense impression exception to the hearsay rule permits testimony of declarations concerning conditions or non-exciting events observed by the declarant. *Commonwealth v. Harper*, 419 Pa.Super. 1, 614 A.2d 1180, 1183 (1992),

_____

8 *Carney v. Pennsylvania Railroad Co.*, 496, 240 A.2d 71, 75 (Pa. 1968) (the party seeking the admission of the out-of-court statement must demonstrate through corroborating evidence that the declarant actually viewed the event of which she speaks).

appeal denied, 533 Pa. 649, 624 A.2d 109 (1993). The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation. *Commonwealth v. Blackwell*, 343 Pa.Super. 201, 494 A.2d 426, 431 (1985). In addition, the present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone. *Commonwealth v. Harris*, 442 Pa.Super. 6, 658 A.2d 392, 395 (1995).

In *Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166 (1999), our Supreme Court explained the following regarding the interplay between the right to confrontation of a witness and exceptions to the hearsay rule:

> With respect to the confrontation issue, the United states Supreme Court in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), held that a statement that came within an exception to the hearsay rule would not violate the Confrontation Clause if it had sufficient "indicia of reliability."

*Young*, 748 A.2d at 177.

*Commonwealth v. Cunningham*, 805 A.2d 566, 573, (Pa. Super. 2002).

Applying these principles, we are satisfied that there was no abuse of discretion in the trial court admitting the 911 call into evidence. Ms. Liggins's 911 call was made while she was experiencing the events underlying Appellant's criminal charges and, therefore, was admissible as a present sense impression exception to the rule against hearsay. To the extent that the trial court focused its rationale on the excited utterance exception, we note that we may affirm the decision of the trial court on any correct basis. *See Commonwealth v. Wilcox*, 174 A.3d 670, 674 n.4 (Pa. Super. 2017) (explaining that the Superior Court is not bound by the

- 17 -

rationale of the trial court, and we may affirm the trial court's order on any basis supported by the record) (citation omitted).

In Appellant's final issue, he challenges the weight of the evidence. "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted). A trial court's determination that a verdict was not against the interest of justice is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. Colon–Plaza*, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them

equal weight with all the facts is to deny justice." ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting ***Widmer***, 744 A.2d at 751-752).

We observe that Appellant's weight-of-the-evidence argument largely rehashes his challenge to the sufficiency of the evidence. In our discussion relative to the sufficiency of the evidence, we concluded that the evidence was sufficient to establish that Appellant constructively possessed the firearms. After our review of the record, we agree with the trial court that as the ultimate fact-finder, the jury properly weighed the evidence. As the trial court concluded: "the verdict is not contrary to the evidence and does not shock the [trial court's] sense of justice." Memorandum Denying Post-Sentence Motion, 8/31/17, at 12. We discern no abuse of discretion in the trial court's conclusion that the verdict was not against the weight of the evidence.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/01/2018

- 19 -